CITY OF JACKSON *v.* DIXIE GREYHOUND LINES, INC.

(In Banc.   Nov. 24, 1941.)

[4 So. (2d) 721.   No. 34741.]

Morse, Bacon & Shands, of Jackson, for appellant.

**Watkins & Eager**, of Jackson, and **Shepherd, Owen & Heiskell**, of Memphis, Tennessee, for appellee.

**Anderson, J.,** delivered the opinion of the court.

This is an appeal by, the City of Jackson from a judgment of the Circuit Court of Hinds County setting aside and holding for naught the order of the Mayor and Commissioners of that city approving an assessment by the City Tax Assessor for city taxes for the year 1940 of certain motor buses owned and operated by the appellee, Dixie Greyhound Lines, Inc., a foreign corporation.

The property assessed is 15 buses at $5,000 each, aggregating $75,000, and another bus kept at Jackson for emergency purposes at $1,000. There is no controversy as to the emergency bus except as to the assessed value. In addition the company was assessed with certain furniture, fixtures and equipment in its offices at Jackson at $2,700. That assessment is unquestioned and is, therefore, not involved in this cause.

There is no real controversy in reference to the facts of the case; they are in substance as follows: The bus company holds certificates of public convenience from the Public Service Commission of the State. It has for some years operated as common carrier of passengers by motor bus transportation over some of the public highways of

the State. The latter part of December 1939 it constructed a new bus station on Lamar Street in the City of Jackson where its buses have since stopped for the purpose of discharging and taking on passengers. Its buses are operated in and through the State of Mississippi on schedules submitted to and approved by the Mississippi Public Service Commission. The buses, other than one extra which will be referred to hereafter, have no domicile in the City of Jackson; their headquarters are in Memphis, Tennessee, where they are repaired and overhauled. The company has headquarters there for the State of Mississippi. No repair work of any kind is done in this State. No tools or equipment of any kind are kept for repair in Jackson. In Memphis the company has a complete repair shop where the buses are "overhauled on a 50,000 mile basis." There they are inspected for every trip out.

At its depot in Jackson it has employed three agents who sell tickets, two porters and one baggage man. In addition it keeps one man for emergency work. His duties are performed more outside of the city than in the city. He services broken down buses on trips outside of the city. It has and maintains a depot building at each of the following towns in this State, Clarksdale, Greenwood, Columbus, Tupelo, Greenville and Vicksburg; at which places it has ticket agents. Buses out of Memphis stop for meals in Clarksdale and in some other points between Memphis and that place. The company deposits in local banks in Jackson, but they are checked out alone from the Memphis office. It has a warehouse on Mill Street in Jackson, where the buses are stored when they have to remain overnight, as happens sometimes.

The buses are all numbered. The schedule of buses out of and into the City of Jackson on January 1st, 1940, was as follows:

Bus Numbers:

No. 842—Departed Clarksdale 10:10 a. m., passing through Coahoma, Tallahatchie, Leflore, Holmes, Madi-

son, and Hinds Counties. Arrived at Jackson 2:10 p. m. Leaving Jackson 2:40 p. m., passing through same counties arriving at Clarksdale 6:40 p. m. (R. 69).

No. 853—Departed Memphis 11:15 p. m., December 31, 1939, arrived Jackson 4:25 a. m., January 1, 1940. Passed through DeSoto, Tate, Panola, Yalobusha, Grenada, Montgomery, Carroll, Holmes, Madison, and Hinds Counties; that is to say, every County on Highway No. 51. Left Jackson for New Orleans 4:30 a. m. (R.76-77).

No. 859—Arrived Jackson from New Orleans January 1, 1940, 6:25 p. m. Departed for Memphis 7 p. m., arriving 11:45 p. m., passing through all counties Highway No. 51 (R. 77-78).

No. 603—Departed Memphis 8 a. m., January 1, 1940, arriving Jackson 3:25 p. m., passing through every county on Highway No. 51. Left Jackson, Mississippi, for Greenville 4:45 p. m., arriving Greenville 8:15 p. m., passing through Hinds, Madison, Yazoo, Humphreys, Sunflower, Washington Counties (R. 82-85).

No. 845—Arrived from New Orleans, Louisiana, 12:45 p. m., January 1, 1940. Departed for Memphis 1:30 p. m., passing through every county on Highway No. 51 (R. 87-90).

No. 843—Departed Jackson January 1, 1940, 8:15 a. m., for Clarksdale, passing through all counties on Highway No. 49-E, arriving 12:25 p. m.; departed Clarksdale 2:40 p. m., for Jackson, Highway 49-E, arriving at Jackson 6:50 p. m. (R. 90-94).

No. 841—Departed Greenville January 1, 1940, 6:30 a. m., arriving Jackson 10 a. m., passing through six counties. Departed Jackson same date 1:30 p. m., for Memphis, arriving 8:55 p. m., passing through each and every county on Highway No. 51 (R. 95-96).

No. 604—Arrived at Jackson from Memphis over Highway No. 51 at 8:15 p. m., December 31, 1939; departed for Memphis on return trip at 7:30 a. m., passing through every county on Highway No. 51, arriving 2:55 p. m. (R. 96-100).

No. 844—Departed Memphis 12:30 p. m., January 1, 1940; arrived in Jackson 7:40 p. m., passing through every county on Highway No. 51, departing for New Orleans. (R. 103-105).

No. 469—Arrived Jackson from New Orleans 12:45 a. m.; departed 1 a. m., for Memphis, passing through every county on Highway No. 51. (R. 110).

No. 468—Arrived in Jackson from Memphis, over Highway No. 51, at 12:15 p. m., departing for New Orleans 5:30 p. m. (R. 111).

It will be observed from the schedule above that bus No. 842 came into Jackson from Clarksdale and remained only 30 minutes. That on the 1st day of January, 1940, it was in Clarksdale and passed through six counties, including Hinds, arriving in Jackson and returning to Clarksdale. In doing so it passed through a number of municipalities. It will be observed that bus No. 853 running from Memphis, Tennessee, to New Orleans, Louisiana, passed through every county and municipality on Highway 51 from the former to the latter city. It will be observed that bus No. 603 travelled through every county and municipality on Highway 51 between Memphis, Tennessee, and Jackson, reaching the latter place at 3:25 p. m., remaining one hour and twenty minutes, and then left for Greenville, passing through six counties and several municipalities, all in one day. It will be observed that bus No. 844 reached Jackson on January 1st, 1940, at 7:40 p. m., and after a few minutes left for New Orleans, passing through every county and municipality on Highway 51; and that bus No. 649 passed through every county and municipality on Highway 51, stopping at Jackson fifteen minutes.

The company keeps in the city, however, one old bus, No. 303, which was used for emergency purposes alone and which was given in for taxation at $1,000 value. The court held that this bus was taxable upon the valuation of $1,000.

We are of the opinion that the assessment is void under

the principles laid down in the case of State v. Union Tank Car Co., 151 Miss. 797, 119 So. 310, 312. The buses are without situs for ad valorem taxation unless the Legislature has laid down a method of taxation. In that case the court used this language:

"It seems that such property as is here involved has been the subject of much discussion and litigation. Assuming, but finding it unnecessary to decide, that chapter 129, Laws of 1926, is free from constitutional objections, we think it may be safely stated that before the state can tax such property as here in question, it must, by proper legislation, fix a taxable situs for such property, and provide a method and basis for its assessment. This the state has sought to do by chapter 129, Laws of 1926, with prospective operation only.

"As the situs of the Union Tank Car Co., appellee, is in the State of New Jersey, that state, as a general rule, would be considered as the situs of all its personal property, until this state enacted a statute fixing its taxable situs in Mississippi. In 56 Am. Dec. 535, we find a helpful note, as follows:

" 'This peculiar property, which has furnished the topic of so much discussion, is held to be situated, in the absence of a special statute, in the town where the principal office of the corporation is; that is, at the corporate residence. Without the help of a statute, it is incapable of acquiring a permanent locality or situs separated from the owner's residence' citing: 'Mohawk, etc., R. R. Co. v. Clute, 4 Paige (N. Y.) 384; Appeal Tax Court v. Western Md. R. R. Co., 50 Md. 274; Philadelphia, Wilmington, etc., R. Co. v. Appeal Tax Court, 50 Md. 397; Appeal Tax Court v. Northern Cent. Ry. Co., 50 Md. 417; Appeal Tax Court v. Pullman Palace Car Co., 50 Md. 452; [State ex rel.] Kansas City, etc., R. Co. v. Severance, 55 Mo. 378; City of Dubuque v. Illinois Cent. R. Co., 39 Iowa 56; Orange, etc., R. R. Co. v. Alexandria, 17 Grat. [176] 58 Va. 176.' "

The authorities cited in that opinion amply support it.

Whether there is a method laid down in Section 3200 of the Code of 1930 for assessment of property of this character by the Tax Commission for state, county and municipal taxes we do not decide, because the question is not presented. If there be such a method it would be exclusive. The City Tax Assessor would be without authority in that respect.

These buses under the present law have no situs in this State for assessment for ad valorem taxes. If Jackson has authority to assess them at their value every municipality through which they run would have equal authority. If that were done surely it would violate Section 112 of the Constitution providing that taxation shall be uniform and equal throughout the State.

The court found that a reasonable valuation for taxes of the emergency bus kept in Jackson was $1,000. We see no reason to disturb that finding.

Affirmed.