**GREYHOUND LINES, INC., Petitioner,**

v.

**BOARD OF EQUALIZATION FOR the CITY OF FORT WORTH et al., Respondents.**

No. B–196.

Supreme Court of Texas.

Oct. 4, 1967.

Stone, Tilley, Parker, Snakard, Law & Brown, Richard Lee Brown, Fort Worth, for petitioner.

S. G. Johndroe, Jr., City Atty., Fort Worth, for respondents.

CALVERT, Chief Justice.

As originally filed, the purpose of this suit by Greyhound Lines, Inc., a California corporation, was to have declared void ad valorem tax assessments made by tax officials of the City of Ft. Worth and Ft. Worth Independent School District on 277 of its buses for the year 1965. Before trial, the taxes levied, $12,900 by the city and $11,775 by the school district, were paid under protest, and by amended petition Greyhound sought recovery of the taxes so paid. The plaintiff filed a motion for summary judgment and the defendants filed a similar joint motion. The trial court granted the defendants' motion and declared the assessments made by officials of the city and the school district valid, thus decreeing, in effect, that Greyhound take nothing by its suit. The court of civil appeals reversed the judgment of the trial court and remanded the cause for trial of what it deemed to be a fact issue. 412 S.W.

2d 76. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

On summary judgment proofs establishing uncontroverted facts, including the fact that Greyhound's principal place of business in Texas is in Ft. Worth, the trial court concluded, in effect, that the 277 buses had a situs for taxation in the city and the school district, and that an apportionment formula used by officials of the city and the district for arriving at the value at which the buses were assessed was authorized by law. The formula used by taxing officials for arriving at an assessed value of $750,000 on the buses, involved ascertainment of (1) the present value of buses owned by Greyhound and operated within the State of Texas; (2) the total number of route miles traveled by the buses; (3) the number of route miles traveled by the buses within the State of Texas; (4) the ratio of the route miles traveled by the buses within the State of Texas to the total route miles traveled within and without the State; (5) the present value of the use of the buses in Texas as measured by the ratio of route miles traveled in Texas to total route miles traveled within and without the State; (6) 55% of the present value of the use of the buses in Texas.

Two points of error were presented by Greyhound in the court of civil appeals. The first asserted that the trial court erred in holding that its buses had a situs for taxation in the city and the school district. The second asserted that the trial court erred in holding that the city and school district had the right to adopt an apportionment formula for taxing the buses in the absence of authorizing legislation. As we understand the opinion, the court of civil appeals held that buses owned by a foreign corporation and operated in interstate commerce in the State of Texas can acquire a tax situs in Texas, and that an ad valorem tax can "be imposed thereon on basis of equitable apportionment fairly and in good

faith calculated in consideration of presence or use within as compared with presence or use both within and without the state"; but the court further held that local taxing units are authorized "only to impose such character of tax on basis of an equitable apportionment fairly and in good faith calculated in consideration of presence or use within the *subdivision* as compared with presence or use both within and without the *subdivision*."[1] The court also held that the number of buses which can be taxed by a local taxing entity is "the average number and value of buses" maintained and used *in the taxing subdivision.* Having thus apparently disagreed with both the method used by the city and school district for ascertaining *the number of buses* subject to taxation and *the formula used* for arriving at assessed value, the court of civil appeals reversed the trial court's judgment and remanded the cause to that court to determine the proper amount of taxes due by Greyhound to the city and school district.

Both parties, plaintiff and defendants, applied for writ of error and both applications were granted. Greyhound's application presents essentially the same questions presented in the court of civil appeals. In addition, both Greyhound and the taxing entities attack the method announced by the court of civil appeals for determining the number of buses to be taxed and the formula for arriving at their taxable value.

Greyhound's contention that its buses do not have a tax situs in Ft. Worth, Texas, is based upon the common law rule that as personal property its buses are constructively situated at its corporate domicile in California (*mobilia sequuntur personam*—movables follow the person); and that the rolling stock of a motor bus company traveling and used in Texas as a part of its interstate operations does not come within any of the exceptions recognized in Texas to rule of *mobilia.* It emphasizes that the only judicially declared exceptions to the *mobilia* rule are set out in State v. Crown Central

---

1. Emphasis ours throughout unless otherwise indicated.

Petroleum Corp., 242 S.W.2d 457 (Tex.Civ. App.—San Antonio 1951, writ ref'd), and are as follows: "(1) there is a statute to the contrary, or (2) the property is tangible and has acquired an actual situs of its own in a state or place other than where owner is domiciled or (3) in case of intangible property, it has acquired a business situs in a state other than the one where the owner is domiciled." It then argues that inasmuch as its rolling stock is not intangible property, there is no statute fixing a tax² situs therefor, and there is no proof that any of its buses had through permanency of location in Ft. Worth acquired a tax situs of their own in the city and school district, the defendants were without power to impose the taxes in question. It should be noted at this point that Greyhound does not contend that imposition of the taxes violates the constitutional inhibition against unduly burdening interstate commerce or the constitutional guaranty of due process, except, as to the latter, in so far as its denial of tax situs may raise a question of due process. See Braniff Airways v. Nebraska State Board, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954).

■ Greyhound is correct, of course, in asserting that its buses do not come within the exception to *mobilia* relating to intangibles. It is also correct in asserting that there is no Texas constitutional or statutory provision expressly fixing a tax situs for rolling stock of foreign motor bus corporations which travels and is used in Texas in interstate operations, as there is for rolling stock of railroads. See Tex.Const. Art. VIII, Sec. 8 and Art. 7169.² The question thus narrows to whether the buses have acquired an actual tax situs of their own in this State and in the city and school district. We consider first whether the buses have acquired a tax situs in the State; for, if they have not, they cannot have acquired a tax situs in the city and school district.

The constitutional provisions relevant to the power of the State to impose taxes on the property of corporations are Art. VIII, Secs. 1, 3, 4 and 11. The pertinent provisions will be quoted. Sec. 1: "Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. * * *" Sec. 3: "Taxes shall be levied and collected by general laws and for public purposes only." Sec. 4: "The power to tax corporations and corporate property shall not be surrendered or suspended by act of the Legislature, by any contract or grant to which the State shall be a party." Sec. 11: "All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated * * *."

The relevant statutory provisions will be quoted. Art. 7145: "All property, real, personal or mixed, except as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed." Art. 7147: "Personal property, for the purposes of taxation shall be construed to include * * all personal estate of moneyed corporations, whether the owners thereof reside in or out of this State * * *." Art. 7153: "All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated * * *."

■ Neither the Constitution nor the statutes provide for exemption of personal property of foreign corporations in this State from taxation by this State and its political subdivisions. Indeed, the express language of Sec. 4, Art. VIII of the Constitution denies to the Legislature the power to grant such an exemption; and yet, to hold that the rolling stock of a foreign motor bus corporation, constantly traveling upon the highways of this State and enjoying the protection and benefits provided by this State, has no taxable situs in the State,

---

2. All Article references are to Vernon's Tex.Civ.Stat.Ann.

would be to grant it tax exemption. Moreover, such a holding would result in discrimination against motor bus corporations chartered in this State, similarly using its highways, in violation of the "equal and uniform" mandate of Sec. 1, Art. VIII of the Constitution. A result so incompatible with the clearly expressed intention of the framers of the Constitution and of the Legislature in its statutory enactments, should not be reached unless compelled by some immutable law or some overriding public policy consideration. We hold that it is not compelled by either.

■ Texas has adopted the *mobilia* rule as the basic rule for locating the tax situs of tangible personal property at the domicile of the owner. That was the rule of the common law; and the provisions of Sec. 11, Art. VIII of the Constitution and of Art. 7153 requiring that property be taxed "where situated" are but declarative of the common law, and mean where the property is situated for tax purposes under principles of common law. Great Southern Life Insurance Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778 (1922). But the *mobilia* rule is a legal fiction, Guaranty Life Ins. Co. v. City of Austin, 108 Tex. 209, 190 S.W. 189 (1916); and as one writer, quoting liberally from courts of highest authority, has put it:

> "It was 'intended for convenience, and not to be controlling where justice does not demand it.' It is not of universal application, does not rest on any constitutional foundation, and gives way before express law. As has been said, 'the fiction that personal property follows the domicile of its owner' cannot be allowed 'to obscure the truth.' 'This rule,' it has been well said, 'is subject to so many exceptions and limitations that it is quite as liable to mislead as to furnish a correct guide, when considered alone'."

Cooley, The Law of Taxation, § 440 (4th ed. 1924).

■ To acquire a tax situs of its own in a particular state, it is not necessary that tangible personal property be situated in the state with absolute permanency, or that it be there situated with no intention on the part of the owner to remove it; it is enough to fix tax situs that its situation have a degree of permanency which will distinguish it from property which is in the state on a purely temporary or transitory basis. Guaranty Life Ins. Co. v. City of Austin, 108 Tex. 209, 190 S.W. 189 (1916); Hardesty Bros. v. Fleming, 57 Tex. 395 (1882); Town of Cady v. Alexander Const. Co., 12 Wis.2d 236, 107 N.W.2d 267, 108 N.W.2d 145 (1961); Cooley, The Law of Taxation, § 452 (4th ed. 1924); 51 Am.Jur. Taxation, § 454.

■ There is no summary judgment proof in the record that any single one of the 277 buses was stationed in Texas with any degree of permanency; but with respect to transportation units owned by corporations engaged in an interstate transportation business, the Supreme Court of the United States has held in a long line of decisions that the legal requirement of permanency of situation and therefore tax situs of such units apart from the state of legal domicile, is established by continual use, regular or irregular, of the units in a non-domiciliary state. Pullman's Palace Car. Co. v. Commonwealth of Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1890); Adams Express Co. v. Ohio State Auditor, 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683 (1896), on rehearing, 166 U.S. 185, 17 S.Ct. 604, 41 L.Ed. 965 (1897); American Refrig. Transit Co. v. Hall, 174 U.S. 70, 19 S.Ct. 599, 43 L.Ed. 899 (1898); Union Refrig. Transit Co. v. Lynch, 177 U.S. 149, 20 S.Ct. 631, 44 L.Ed. 708 (1899); Johnson Oil Ref'g Co. v. State of Oklahoma, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238 (1933); Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1948); Braniff Airways, Inc. v. Nebraska State Board, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1953). The cited cases leave

no doubt that Greyhound's buses traveling in and using the highways of Texas in carrying on the corporation's business enterprise have a tax situs in this State.

■ Once the conclusion is reached that the buses have a tax situs in this State, the question of local tax situs can have only one logical answer. In the absence of legislation to the contrary, the local tax situs of rolling stock owned by a corporation is at the place where the corporation maintains its principal office or place of business. This court has so held with respect to rolling stock of a domestic corporation, City of Ft. Worth v. Southland Greyhound Lines, 67 S.W.2d 354 (Tex. Civ.App.—Ft. Worth, 1931), certified questions answered, City of Ft. Worth v. Southland Greyhound Lines, 123 Tex. 13, 67 S.W.2d 361 (1933); Gulf, C. & S. F. Ry. Co. v. City of Dallas, 16 S.W.2d 292 (Tex. Com.App., 1929); Chemical Express v. City of Roscoe, 310 S.W.2d 694 (Tex.Civ. App.—Eastland, 1958, writ ref'd); and the rule *is equally applicable to rolling stock of foreign corporations.*

■ Texas constitutional and statutory provisions for taxing property owned by corporations make no distinction between that owned by domestic and that owned by foreign corporations. In interstate relationships domestic corporations are domiciled in Texas, and in purely intrastate or local relations they are domiciled at their home office or principal place of business. So it is with foreign corporations doing business in this State. In interstate relationships they are domiciled in the state where incorporated, but the equivalent of a local domicile for purposes of doing business in Texas is at their principal place of business in this State when one has been established. See McDaniel v. Texarkana Cooperage & Mfg. Co., 94 Ark. 235, 126 S.W. 727 (1910). Cf. Pittsburg Water Heater Co. of Texas v. Sullivan, 115 Tex. 417, 282 S.W. 576 (1926). We hold that to the extent that Greyhound's buses are taxable in Texas, their tax situs, in the absence of legislation

establishing a different situs, is in Ft. Worth. The provisions of the Charter of the City of Ft. Worth and of the legislative act creating the Ft. Worth Independent School District authorizing, respectively, the levy of ad valorem taxes on personal property "located within the territorial limits" of the city and "located in" the school district do not militate against our conclusion. The expressions are synonymous with "where situated." See Gulf, C. & S. F. Ry. Co., 16 S.W.2d 292 (Tex.Com. App., 1929). We need not and do not decide where in Texas the tax situs of the buses would be if Greyhound had no principal place of business in this State.

There is no statute expressly providing a formula for assessing the rolling stock of foreign motor bus corporations used in and operated over the highways of this State, but we have no doubt of the authority of the city and school district to use the formula they adopted. Ft. Worth is a Home Rule City, deriving its powers from Sec. 5, Art. XI of the Constitution, the Home Rule amendment, which reads in pertinent part as follows:

"Cities having more than five thousand (5000) inhabitants may * * * adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; *said cities may levy, assess and collect such taxes as may be authorized by law or by their charters;* * * *."

Art. 1175, enacted to implement the Home Rule Amendment, contains the following provisions:

"Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by

any such city the following are hereby enumerated for greater clarity:

\* \* \* \* \* \*

"7. To provide for the levying of any general or special ad valorem tax for any purpose not inconsistent with the Constitution of this State.

"8. To provide for the mode and method of assessing taxes, both real and personal, against any person and corporation \* \* \*.

"9. To provide for the collection of all taxes. \* \* \*"

Art. 7145 requires that all personal property be rendered for taxes, and Art. 7174 requires that it "be valued at its true and full value in money."

The charter of the city expressly confers the power to "assess, levy and collect taxes for general and special purpose on all the subjects or objects which the City may lawfully tax"; and it further provides that the city shall have and exercise all the powers conferred upon cities by the Home Rule Amendment, by Art. 1175, and by all other laws passed by the Legislature relating to the powers enumerated in the charter.

■ Under the provisions of the Constitution, the statutes and the charter, it was the duty of the city tax assessor to assess Greyhound rolling stock which had a tax situs in this State and in the city. It was also his duty to make the assessment of the rolling stock at its "true and full value" as limited by the decisions of the Supreme Court of the United States. The assessor called upon Greyhound's agents for a rendition of the rolling stock, and they declined to make it. Art. 7193 provides that when a tax assessor fails to obtain a rendition from a property owner, he "shall ascertain the amount and value of such property and assess the same as he believes to be the true and full value thereof; and such assessment shall be as valid and binding as if such property had been rendered by the

proper owner thereof." It thus became the further duty of the tax assessor to ascertain the number of buses regularly and continuously operated by Greyhound in this State in interstate commerce and to adopt a formula for arriving at their value which would meet the standards of fairness and reasonableness decreed by the Supreme Court of the United States in the decisions herein cited. Authority for adoption of such a formula is amply supplied by the quoted statutes, particularly by paragraph 8 of Art. 1175 which authorizes Home Rule cities to provide for "the mode and method of assessing taxes."

In support of its contention that the city tax assessor could not adopt an apportionment formula as a basis for taxing its buses in the absence of enabling legislation, Greyhound cites City of Bessemer v. Southern Ry. Co., 157 Ala. 428, 48 So. 103 (1908) ; State ex rel. Knox v. Union Tank Car Co., 151 Miss. 797, 119 So. 310 (1928) ; City of Jackson v. Dixie Greyhound Lines, Inc., 192 Miss. 133, 4 So.2d 721 (1941) ; and Lewis & Holmes Motor Freight Corp. v. City of Atlanta, 195 Ga. 810, 25 S.E.2d 699 (1943). Aside from the fact that some of the cited cases seem not to be in point, all may be distinguished by the fact that none of the decisions are by courts of states which are shown to have constitutional and statutory provisions similar to those in this State applicable to Home Rule cities.

■ The summary judgment evidence establishes that in 1960 Greyhound's predecessor, Southwestern Greyhound Lines, Inc., rendered 277 buses for taxation by the City of Ft. Worth and Ft. Worth Independent School District, and that there had been no significant change between 1960 and 1965 in the number of buses operating in the State. The evidence also establishes that the formula used by the assessor in 1965 for arriving at the assessed value of the buses was the same as that used by the predecessor corporation in rendering its buses for taxation by the city and school district in 1960. The formula meets the

standards of fairness and reasonableness laid down by the Supreme Court of the United States in the decisions cited earlier in this opinion. See Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1948). Assuming their taxability by the city and school district, Greyhound does not question either the number of buses taxed or the fairness and reasonableness of the formula used to arrive at their taxable value. We hold that the assessment of the buses for city purposes is in all respects valid, and that Greyhound is not entitled to recover the sum of money paid to the city as taxes for 1965.

Our holding with respect to city taxes automatically settles the question with respect to school district taxes. The Ft. Worth Independent School District was incorporated by a special act of the Legislature. See 23 Gammel's Special Acts 39th Leg. 1925, ch. 230, p. 674. The act directs the tax assessor of the City of Ft. Worth to assess all property located in the school district, and provides that such assessment shall "be the same as the assessment made in the city of Fort Worth for municipal purposes."

There is no fact question to be decided in this case. The judgment of the court of civil appeals is reversed and judgment is here rendered that plaintiff take nothing.