NACOGDOCHES INDEPENDENT SCHOOL DISTRICT, Petitioner,

v.

R. W. McKINNEY, Respondent.

No. B–3826.

Supreme Court of Texas.

Jan. 9, 1974.

Rehearing Denied Feb. 28, 1974.

Benchoff & Guidry, William D. Guidry and Edmund F. Benchoff, Nacogdoches, for petitioner.

Pye & Dobbs, J. Robert Dobbs, Jr., Tyler, Barrow, Bland, Rehmet & Lee, David Bland, Houston, for respondent.

DANIEL, Justice.

This suit is by the Nacogdoches Independent School District against a resident of the District, R. W. McKinney, to recover taxes, penalty and interest on road building equipment which was admittedly never physically situated within the District. It involves a determination of the taxable status of McKinney's interest in tangible personal property located and used outside the District by three separate business entities. There is also a question of limitations under Article 7298.[1]

McKinney is engaged in the highway construction business in Texas and other states. His Texas operations are conducted through R. W. McKinney, General Contractor, with headquarters, offices and yards located at Leonard, Texas; a partnership of R. W. McKinney and T. L. James & Company, Inc., with headquarters in Waco, Texas; and a partnership of McKinney-Deaton, with headquarters at Sanger, Texas. McKinney owned one-half interest in the two partnerships.

On January 26, 1965, in Cause No. 1561, the District sued McKinney for taxes alleged to be delinquent for 1960 on tangible property physically located within the District,[2] and on road building equipment physically located outside the District, such as trucks, tractors, road graders, scrapers, rollers, dozers, rock crushers and other movable machinery and equipment owned solely by R. W. McKinney, General Contractor, and one-half of the same type of equipment owned by the two partnerships. In 1961, the Board of Equalization of the District, after a hearing on the tax assessor-collector's request to make a similar increase in McKinney's assessments to cover his interest in the tangible properties used in his business enterprises outside the District, declined to do so. It accepted his assessment on tangibles physically situated within the District. In 1969, while Cause No. 1561 was still pending, the tax assessor for the District assessed personal property taxes on all tangible property owned and used by McKinney outside the District and

---

1. All Article references are to Vernon's Annotated Texas Civil Statutes.

2. McKinney admitted that his personal office furniture and equipment, autos and an airplane were located in the District. He rendered same and tendered payment upon conditions that it would be accepted in full settlement of his 1960 taxes on personal property. This the District refused.

back assessed such taxes against him for the years of 1962 through 1968. On September 22, 1969, McKinney sued the District in Cause No. 14,602 for a declaratory judgment seeking to have the 1962–1969 assessments declared null and void. By its fourth amended petition filed on October 6, 1971, in Cause No. 1561, the District sought recovery for alleged delinquent ad valorem taxes on the tangible personal property assessed for 1960 and for 1962 through 1969, together with penalties, interest and costs from the respective dates of the alleged delinquencies.

The two causes were consolidated and tried before the court without a jury. Upon findings and conclusions that none of the tangible personal property was physically located within the boundaries of the District during the years in question (except for the office furniture and equipment, automobiles and airplane included in the 1960 assessment) but that the property had acquired no permanent location in any other county or district, the trial court applied the rule of *mobilia sequuntur personam* (moveables follow the owner) and rendered judgment for the District in the sum of $68,586.27. This represented the total of the taxes alleged to be due for the years of 1960 and 1965 through 1969, together with penalties, interest and costs which had accrued as of October 1, 1971. The trial court sustained McKinney's plea of limitation as to the taxes assessed for and alleged to be delinquent for the years of 1962 through 1964. Both parties appealed, with the District's appeal being limited to the trial court's denial of recovery of the 1962–1964 taxes.

The Court of Civil Appeals reversed and rendered as to the taxes adjudged to be due by McKinney on one-half of the personal property owned by the two partnerships, and affirmed as to the remainder of the trial court's judgment. 489 S.W.2d 161. Both parties are petitioners here. We agree with the reversal of the indicated portion of the trial court's judgment, but disagree with the affirmance of the judgment against McKinney for taxes alleged to be due on personal property used wholly in connection with his highway construction operations conducted out of his headquarters office and yards at Leonard. Therefore, we reverse the judgments of the courts below, and remand the case to the trial court for entry of a judgment in accordance with this opinion.

## THE TWO PARTNERSHIPS

■ The Court of Civil Appeals has summarized the evidence and the findings of fact which are supported by the evidence. Except as hereinafter pointed out, we agree with these summaries. We further agree with that court's reasoning as to the partnership status of R. W. McKinney and T. L. James & Company, Inc. and McKinney-Deaton, and the effect of their principal operating headquarters being situated in Waco and Sanger, respectively. For the reasons pointed out, each of these partnerships constituted a separate legal entity; each was engaged in separate business enterprises conducted from their principal offices and domiciles in Waco and Sanger; neither maintained its place of business in Nacogdoches or kept any of its equipment there. For these reasons, and upon the authorities cited in its opinion, the Court of Civil Appeals has properly held as a matter of law that the Nacogdoches School District is not the taxable situs of tangible personal property belonging to the two partnerships and situated completely outside of the boundaries of said District.

## R. W. McKINNEY, GENERAL CONTRACTOR

Most of the trial court's findings of fact dealt generally and broadly with the operations of all three of the separate business entities through which McKinney carried on his highway construction operations in Texas. Since the case as to two of these entities has been correctly disposed of adversely to the District, we have attempted

to eliminate from our consideration all evidence which related solely to them in reexamining the evidence and the fact findings in the light most favorable to the trial court's judgment in favor of the District. Concentrating upon the evidence which relates to the separate business enterprise of R. W. McKinney at Leonard, the following trial court findings adverse to him are fully supported by the evidence: that the business enterprise is a sole proprietorship owned by R. W. McKinney; that he was the sole owner of trucks, tractors, road graders, scrapers, rollers, crushing plant and movable tools, machinery and equipment of the value shown on the schedule as belonging to him and his wife on January 1st of the relevant years; that he is a contractor engaged in the highway construction business and a resident of Nacogdoches and the Nacogdoches Independent School District continuously "since many years prior to 1960"; his own labors in all his construction enterprises are performed primarily in Nacogdoches, where he keeps his major bank accounts and conducts monetary transactions; that accounting processes and controls, receipts and disbursements, insurance, business records and reports are conducted, compiled and kept in his Nacogdoches office; that "the property of R. W. McKinney owned by him in its entirety is not and has not been permanently physically situated in Leonard, Fannin County, Texas, (where he has maintained a field office, repair shop and storage yard) or in any other county, school district or place within the State of Texas in any of the years of 1960 or 1962 through 1969, inclusive"; and that the majority of the highway construction jobs are in counties and places other than those where the shops and yards are located.

A finding favorable to McKinney, supported by undisputed evidence, was that "None of the property upon which the taxes indicated in Schedule A as being assessed by the District was physically located within the boundaries of the plaintiff District, except as indicated for the year 1960 on Schedule A." [3]

There were other general findings of fact as to the operations and property of all three business entities, which are unsupported by evidence with respect to McKinney's separate business operation at Leonard, Texas, i. e.: that the principal offices of the enterprises in which he is involved are located in Nacogdoches; his authority over the bids and general conduct of the highway construction affairs is principally exercised in Nacogdoches; the administrative center of the enterprises is at Nacogdoches; during the vast majority of the time, the property is on construction sites located over large areas of the State of Texas and in counties far away from the storage yards and repair shops; that the property is not assigned for actual use to the respective field offices, repair shops or storage yards; that relatively small amounts of the property are stored or being repaired at any one time; that the property is there transiently and temporarily rather than with any degree of permanency; it is continuously located in a temporary and transient manner; it cannot be identified as a part of the mass of the property of the places where the shops and yards are located; the continuing location of this property is dependent upon the location of the actual construction sites more than any other factor, and not upon the location of the repair shops and storage yards; and "the property of the Defendant taxed by plaintiff District has not been rendered to other school-tax authorities or assessor-collectors nor has the same been assessed for taxes by them; and such ad valorem school taxes for the years 1960 and 1962 through 1969, inclusive, have not been paid to other school-tax authorities or collectors."

Contrary to the above findings insofar as they apply to McKinney's separate business entity at Leonard, the evidence is undisputed that his principal and only operat-

---

3. See footnote 2 for explanation of this exception.

ing headquarters for R. W. McKinney, General Contractor, has been located at Leonard for more than 25 years; that during all of such time all highway construction operations, bidding on jobs, completing jobs, and purchase, use, repair, junking and replacement of equipment has been the responsibility of McKinney's Superintendent at Leonard, Larry Clotfelter; that none of such operations or decisions are made by anyone in McKinney's office in Nacogdoches; that no one in the Nacogdoches office is capable of bidding or superintending a road construction job; that McKinney, who also has a drilling company and other business interests, quit personally doing this type of work over 20 years ago; that he has visited the Leonard office an average of only once a year for the four years preceding the trial of this case; that Clotfelter has had a power of attorney to bid on highway jobs in McKinney's name for many years and has only missed one State Highway Department contract letting in 20 years; that all of McKinney's personally owned highway construction business is carried on out of the Leonard office and yards located within the Leonard Independent School District, where the administrative and operating center of the business was established and conducted continuously for more than 25 years; that the principal office consists of a permanent concrete block building of 12,500 square feet located with a yard for storage and repairs of the road building equipment on a tract of 4½ acres, employing as high as 200 persons from Leonard and nearby communities; that such business is the largest employer within the Leonard School District; that employees' children grew up and went to school there, with some of them now employed in the Leonard operation; that the individually owned equipment was purchased by Clotfelter to be assigned to and used in the construction business operated in Leonard; that the purpose of the Leonard headquarters was to serve as "the domicile of all the equipment in the operations of R. W. McKinney in the road building business"; that the Leonard operations are confined to Fannin and adjacent counties within a 75 mile radius of Leonard; that none of the equipment is permanently away from the Leonard storage yard, but is sent out on jobs within the area as often and as long as needed to complete the jobs and then is returned to the storage yard; that the chances of a piece of this equipment going directly from job to job is small, as normally it is returned to Leonard for repairs or maintenance before being sent to another job; that four mechanics are stationed at the Leonard yards as permanent employees to repair and maintain the equipment; that the dollar amounts of repairs and maintenance of McKinney's equipment based in and conducted by the Leonard shop from 1961 through 1969, was $1,082,591.23; that all replacement and repair parts for the Leonard based equipment are stored and inventoried on the Leonard yard or within the office and storage building; that from 98% to 99% of the equipment in controversy was stored in the Leonard yard at the time of the trial because of shortage of work, and this has happened once before; that the Fannin County Tax Assessor-Collector assessed and collected taxes for the State, County and School District on at least some of the tangible personal property in question for the years of 1961 through 1968, after which such assessments and collections were made by the Leonard Independent School District; and taxes on at least some of the property were assessed by and paid to the City of Leonard during the same years.

It is of some significance that neither the State, Nacogdoches County nor the City of Nacogdoches, all of whom were impleaded by the District as required by law, asserted any taxes due on the McKinney property physically situated outside the boundaries of the District as well as outside the boundaries of the City and County. All filed pleadings in which they answered that the defendant is not indebted to them for any delinquent taxes, and it is undisputed that McKinney did not pay any taxes for the years in question on the property located outside the Nacogdoches

District except to the State, Fannin County, City of Leonard, and the Leonard Independent School District.

■ We hold that as a matter of law, under the above recited undisputed evidence, that the taxable situs of the tangible personal property of R. W. McKinney last mentioned above was in the Leonard Independent School District, where it was based in connection with a distinct business operation with a sufficient degree of permanency to remove it from the ancient fiction of the *mobilia* rule.

Section 11 of Article VIII of the Texas Constitution, Vernon's Ann.St. provides:

"All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated . . ."

Article 7153, enacted in 1897, provides:

"All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated; and all personal property, subject to taxation and temporarily removed from the State or county, shall be listed and assessed in the county of the residence of the owner thereof, or in the county where the principal office of such owner is situated."

■ The above enunciated policy of limiting taxing jurisdictions to property situated within their jurisdictions is applicable to political subdivisions within counties. Thus, for a city or school district to collect ad valorem taxes on tangible personal property, it must show that the property has a taxable situs, either actually or constructively, within the limits of its boundaries. Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778 (1922); City of Dallas v. Overton, 363 S. W.2d 821 (Tex.Civ.App.1952, writ ref. n. r. e.). See also Greyhound Lines, Inc. v. Board of Equalization for City of Fort Worth, 419 S.W.2d 345 (Tex.1967), and Sanford Independent School District v. H. B. Zachry Company, 393 S.W.2d 402 (Tex.Civ.App.1965, writ ref. n. r. e.).

Our courts have recognized that the phrase "where situated" as used in the above cited constitutional and statutory provisions are but declarative of the common law and mean where the property is situated for the purpose of taxation under principles of the common law, thus permitting a constructive taxable situs of personal property under the common law rule of *mobilia sequuntur personam*. In Great Southern Life Ins. Co. v. City of Austin, *supra*, this Court discussed the common law source of the rule and said:

"The common law, as declared by the courts of the several states, is the rule of decision in this state, and has been so by statute since January 20, 1840. . . .

". . .

"Under the common law, 'mobilia sequuntur personam' was a well-established maxim, and personal property of every description was taxable only at the domicile of its owner, regardless of its actual location. This is still the basic principle upon which the taxation of personal property rests. 26 R.C.L. § 241, pp. 273, 274. But even prior to the Revolution the principle had been abrogated to the extent that, as between different towns and taxing districts, certain classes of tangible personal property had a taxable situs where employed in business, regardless of the domicile of its owner.

. . .

". . .

"It is true that the actual situs of certain classes of visible and tangible personal property . . . may have a situs for taxation where they are permanently kept, separate and apart from the domicile of the owner. . . ."

The District insists that the ancient *mobilia* rule should be applied in spite of the fact that McKinney's equipment was employed in his separate business entity at Leonard and kept there except when sent from the Leonard yards to jobs bid and constructed out of the Leonard office. Its argument is based solely upon the contention that the equipment was not kept at

Leonard with such permanency as to distinguish it from movable property temporarily located in the Leonard District. In determining this question, we must look at the nature of the business and the equipment headquartered there. The object of the business was to keep the road building equipment on jobs within the area as much as possible. However, as much as it was on the move at times, it was ultimately returned to the Leonard yards for repair, maintenance or storage.

The District's argument was made and rejected by this Court with respect to Greyhound buses which were constantly on the move to and from Greyhound's principal Texas office in Fort Worth when in *Greyhound Lines, supra,* the company sought to apply *mobilia* to defeat taxation of the buses by the City of Fort Worth and the Fort Worth Independent School District. In its ruling in favor of the taxing authorities, this Court said:

". . . But the *mobilia* rule is a legal fiction, Guaranty Life Ins. Co. v. City of Austin, 108 Tex. 209, 190 S.W. 189 (1916); and as one writer, quoting liberally from courts of highest authority, has put it:

" 'It was "intended for convenience, and not to be controlling where justice does not demand it." It is not of universal application, does not rest on any constitutional foundation, and gives way before express law. As has been said, "the fiction that personal property follows the domicile of its owner" cannot be allowed "to obscure the truth." "This rule," it has been well said, "is subject to so many exceptions and limitations that it is quite as liable to mislead as to furnish a correct guide, when considered alone".' Cooley, The Law of Taxation, § 440 (4th ed. 1924).

"To acquire a tax situs of its own in a particular state, it is not necessary that tangible personal property be situated in the state with absolute permanency, or that it be there situated with no intention on the part of the owner to remove it; it is enough to fix tax situs that its situation have a degree of permanency which will distinguish it from property which is in the state on a purely temporary or transitory basis. . . ."

See also City of Dallas v. Overton, *supra,* in which it was held that airplanes constantly on the move, but kept upon return in a hanger situated in the City of Addison, had a taxable situs in Addison rather than Dallas, which was the residence of the owners. The Court applied the "more or less permanent location" rule stated in Cooley, The Law of Taxation, § 452 (4th ed. 1924), as against any notion of a requirement of absolute permanency, in holding that the *mobilia* rule was inapplicable.

■ The acquired situs exception to the *mobilia* rule discussed and applied in this case finds justification in the sound theory that property which enjoys the protection of the jurisdiction in which it is more or less permanently located should be made to contribute to the expenses incident to its protection in that jurisdiction. 51 Am.Jur., Taxation § 452, p. 467. Whether one jurisdiction has this greater contact with the property and its uses than another jurisdiction may be considered. The result of such consideration in the present case is in harmony with the above mentioned exceptions to *mobilia* which we have held applicable in this case. There is no question but that the Leonard Independent School District, has the most significant contact with the personal property in question, justifying the fairness of its collection of a tax to help support the schools which are attended by the children of the McKinney employees. The Nacogdoches District has no contact whatever with the property.

A holding that the taxable situs of this property is in the Nacogdoches District would have the effect of denying the Leonard Independent School District the right to collect taxes on the tangible personal property of the largest employer located within its boundaries. Such a holding also would necessarily mean that Fannin County and the City of Leonard, which furnish their protection and services to the

McKinney employees and equipment, would also be denied the right to tax the property in question. It would mean that Nacogdoches County and the City of Nacogdoches, which have not sought to tax the property and which furnish no services of protection or benefit to it, would nevertheless be entitled to tax it to the exclusion of Fannin County and the City of Leonard. We hold that the fiction of the *mobilia* rule was never intended to be carried to such a harsh and inequitable result.

It is necessary that we remand this case to the trial court for it to reform its judgment so as to limit recovery of the District to the 1960 taxes on McKinney's tangible personal property which was then physically located in the District. Since no question of limitations has been raised as to this tax, our disposition of the remainder of the case moots and renders unnecessary our consideration of the limitations point raised by the District.

Accordingly, the judgments of the courts below are reversed and the cause is remanded to the trial court with instructions to enter a judgment in accordance with this opinion.