EXXON CORPORATION, Appellant,

v.

SAN PATRICIO COUNTY APPRAISAL DISTRICT and San Patricio County Appraisal Review Board, Appellees.

No. 13–90–422–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 19, 1991.

Rehearing Overruled Jan. 30, 1992.

---

Randall M. Ebner, Diane Morrow, Houston, Janna K. Whatley, Joseph & Johnson, P.C., Sinton, for appellant.

Russell R. Graham, Deborah S. Cartwright, Calame, Linebarger & Graham, Austin, John Miller, Jr., Sinton, for appellees.

Before NYE, C.J., and DORSEY, and GILBERTO HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a judgment in a bench trial regarding the proper tax situs for crude oil located in a particular county. Exxon Corporation, appellant, complains that the trial court erred in finding that San Patricio County, through which Exxon transports oil, is the proper situs for taxing that oil. Exxon contends that Harris County, the county in which Exxon's principal office is located, is in fact the proper taxing authority.

Exxon raises fourteen points of error. By points one through six, Exxon contends that the trial court erred in finding that its crude oil had taxable situs in the County. By points seven through ten, Exxon complains that the court erred in allowing evidence of and making findings on both Exxon's past voluntary rendering of, and paying taxes on, oil located in the County, and of any public services provided by the County to Exxon. By points eleven and twelve, Exxon complains that no evidence supports the trial court's finding that the crude oil at issue was part of the general mass of personal property in the County in 1988, thereby making it taxable there, and that the finding was against the great weight and preponderance of the evidence. Finally, by points thirteen and fourteen, Exxon maintains that the trial court's finding that Exxon controlled the flow of the oil at issue through the County, and therefore was responsible for taxes on that oil, was against the great weight and preponderance of the evidence. We overrule appellant's points of error and affirm the trial court's judgment.

■ The issue is whether San Patricio County is the proper tax situs for Exxon's crude oil, which was located in seventeen oil tanks in that county on January 1, 1988. Exxon submits the theory that each barrel of oil appraised on January 1, 1988 remained only temporarily in, and was merely being transported through, the County and therefore could not have attained situs there for tax purposes. Exxon applies Tex. Tax Code Ann. § 21.02(4) (Vernon 1982) and contends that the proper tax situs for the oil is Harris County, where the company's principal office is domiciled. The San Patricio County Appraisal District and San Patricio County Appraisal Review Board assert that because Exxon maintained at least 400,000 barrels of oil in seventeen working tanks in the County at all times, the oil had been located there with such a degree of permanence that the oil became part of the general mass of property within the County. Further, the Taxing Authority contends that the oil located in the County on January 1, 1988, remained there for more than a temporary period of time, therefore rendering the County the proper tax situs for the oil under Tex.Tax Code Ann. § 21.02(1) (Vernon 1982).

The facts in this case are not in dispute; most were stipulated by the parties. On January 1, 1988, 774,693 net barrels of Exxon's crude oil were located in seventeen working oil tanks in San Patricio County. Exxon Pipeline Company, the company Exxon used to transport its oil, operated these tanks. The Pipeline Company is wholly owned by Exxon Capitol Corporation, which is wholly owned by Exxon Capitol Holdings Corporation, which is wholly owned by Exxon Corporation (the appellant here). Ninety percent (90%) of the oil transported by Exxon Pipeline Company was owned by the appellant. Every year since 1945, Exxon has voluntarily rendered for taxation the oil located in the working tanks in the County. In addition, every year since 1945 Exxon has voluntarily paid the taxes levied against it on that oil. Furthermore, the County has been providing public services including fire and police pro-

tection to the working tanks and the oil in them.

On January 1, 1988, the Appraisal District appraised the crude oil located within its boundaries, including the oil in the seventeen working tanks. It assessed taxes against Exxon on the 774,693 net barrels of oil located in those tanks; Exxon paid the taxes under protest and complained that San Patricio County was not the proper authority to tax the oil. The company then filed suit seeking review of the order requiring the company to pay the taxes.

The parties stipulated that all Exxon-owned crude involved in this suit was produced or acquired by Exxon to be transported, refined, or sold within the State of Texas but outside of the county. None of this oil was refined in the county, nor was it sold, offered for sale, or available for sale in the county. On average, a specific barrel of crude oil located in the working tanks remained in those tanks for seventeen days.

In its findings of fact and conclusions of law, the trial court found the above stipulated facts and added several of its own. The court additionally found that 1) Exxon's crude oil at issue was part of the general mass of property in the County in Tax Year 1988 as well as in prior and subsequent years, 2) Exxon's crude oil remained in the tanks in the County until sufficient quantities of different grades or types of crude oil were accumulated into larger batches to be sent to Exxon's refinery in Baytown, Texas, 3) Exxon controlled the flow of oil into and out of the tanks located in the County at all times, and 4) Exxon's crude oil was located in San Patricio County, Texas for greater than a temporary period in 1988. The court's conclusion of law was that Exxon's crude oil had taxable situs in the County in Tax Year 1988 pursuant to § 21.02(1) of the Texas Tax Code.

By its first six points of error, Exxon contends that this legal conclusion is incorrect. In particular, Exxon maintains that its oil was only temporarily in the county; therefore, it could not be taxed by San Patricio County pursuant to § 21.02(1) of the Texas Tax Code. Rather, Exxon maintains that it should have been taxed in the county where it maintains its principal place of business under § 21.02(4) of the Code.

Section 21.02 provides in pertinent part:
... tangible personal property is taxable by a taxing unit if:

(1) it is located in the unit on January 1 for more than a temporary period;

(2) it normally is located in the unit, even though it is outside the unit on January 1, if it is outside the unit only temporarily;

(3) it normally is returned to the unit between uses elsewhere and is not located in any one place for more than a temporary period; or

(4) the owner ... maintains his principal place of business in this state ... in the unit and the property is taxable in this state but does not have a taxable situs pursuant to Subdivisions (1) through (3) of this section.

Tex.Tax Code Ann. § 21.02 (Vernon 1982).

As stipulated by the parties, each barrel of oil transported through the County remained there for an average of only seventeen days. Exxon reasons that each barrel located in the County on January 1, 1988, remained there for only seventeen days, and therefore was not located in the taxing unit for more than a temporary period, as required under § 21.02(1) to establish taxable situs in San Patricio County.

We do not agree that when determining whether a large quantity of oil is to be taxed we should consider the situs of each individual barrel separately. The parties stipulated and the trial court found that Exxon maintained over 400,000 net barrels of crude oil in the County at all times in 1987 and in 1988. The fact that each individual barrel does not remain in the County for more than seventeen days, but rather flows sporadically through the working tanks, is inconsequential. We do not view this mass of oil as a continual flow of singular barrels which independently do not remain in the County long enough to establish a tax situs there. Rather, because Exxon held a quantity of over 400,-

000 barrels of oil in San Patricio County in seventeen tanks at all times, a massive quantity was located in the County throughout 1987 and 1988 for more than a temporary period. That the particular oil present on January 1, 1988, shortly left the county is not determinative.

It would be inappropriate when analyzing a quantity of fungible personal property for purposes of discerning its proper tax situs to find that the quantity should be broken down into individual units. Exxon analogizes the constant flow of oil through working tanks and pipelines to the transport of oil in tanker trucks, whereby the trucks sporadically pass through a county and are located by chance within that county's boundaries on January 1st of a Tax Year. We disagree. In that scenario, individual units of oil are being carried *directly through* the county, from border to border, with little or no delays so that a massive quantity of oil does not remain within the county continuously.

However, here, seventeen working oil tanks hold a massive quantity of Exxon oil every day of every year, and they have done so for many years. This quantity cannot be broken down into individual barrels to require permanent situs in the county for each unit before it can be taxed by the county. The evidence here shows that Exxon continuously had a vast quantity of oil located in the county at all times, and, although it varied, the amount located in the county on January 1, 1988, was over 774,000 barrels.

At common law, the general rule applicable to taxation of tangible personal property was *mobilia sequuntur personam,* that is, "movables follow the person." This rule required that personal property be taxed by the authority of the domicile of the owner of the property. The rule was premised upon the idea that owners of personal property kept their possessions with them. Appellant relies heavily upon the decision in *State v. Crown Central Petroleum Corp.,* 242 S.W.2d 457, 462 (Tex.Civ. App.—San Antonio 1951, writ ref'd) which discussed *in dicta* its agreement with the proposition that personal property being transported through a county, or sporadically maintained in that county for transportation purposes only, does not acquire situs in that county for taxation purposes.

The *Crown Central* case is an oil transportation case which mirrors the one at bar with one significant exception: Crown Central *produced* its oil within the taxing authority's (Nueces County's) boundaries; therefore, the oil was from its inception a part of the general mass of property within Nueces County until its permanent removal. Therefore, the property's original tax situs remained in that county; the oil did not have to acquire its situs. *Crown Central* deals with forfeiting the original tax situs of personal property by removing that property from the original tax unit rather than acquiring a new taxable situs. The *Crown Central* Court mentioned *in dicta* the rule that property being transported through a county did not attain taxable situs there. Although no citation to authority was given, the Court was referring to cases in which cargo was moving through a county coincidentally on January 1st of a Tax Year. That is not analogous, nor is it controlling.

The theory of *mobilia* has gradually dissipated with time and with the phenomena of owners remaining separated from their property. Courts began to hold that personal property could acquire a situs different from that of the domicile of its owner, thus implementing the "acquired situs" rule. *See, Brown v. City of Dallas,* 508 S.W.2d 134, 135–36 (Tex.Civ.App.—Dallas 1974, no writ); *Logan v. Ludwick,* 283 S.W. 548, 551–52 (Tex.Civ.App.—Fort Worth 1926, no writ); *City of Galveston v. J.M. Guffey Petroleum Co.,* 51 Tex.Civ. App. 642, 113 S.W. 585, 587 (1908, writ ref'd). In fact, in *Davis v. City of Austin,* 632 S.W.2d 331, 333 (Tex.1982), the Court called the *mobilia* rule a legal fiction to be discarded if injustice or inconvenience arose when applying the rule.

In discarding the *mobilia* rule, Texas Courts have held that in order for property to *acquire* its own tax situs, it need only be located in a particular area with a "degree of permanency which will distinguish it

from property which is in the [area] on a purely temporary or transitory basis." *Davis,* 632 S.W.2d at 334; *Nacogdoches Indep. School Dist. v. McKinney,* 504 S.W.2d 832, 838 (Tex.1974), *modified on other grounds,* 513 S.W.2d 5 (Tex.1974); *Greyhound Lines, Inc. v. Board of Equalization,* 419 S.W.2d 345, 349 (Tex.1967).

In determining the appropriate tax situs for personal property today, the more relevant concern is the amount and type of contact the property has with the government imposing the tax. *See Davis,* 632 S.W.2d at 334; *McKinney,* 504 S.W.2d at 838; *Greyhound,* 419 S.W.2d at 348–49; *Aransas County Appraisal Review Bd. v. Texas Gulf Shrimp Co.,* 707 S.W.2d 186, 192 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). In *McKinney* the Supreme Court held,

> the acquired situs exception to the *mobilia* rule ... finds justification in the sound theory that property which enjoys the protection of the jurisdiction in which it is more or less permanently located should be made to contribute to the expenses incident to its protection in that jurisdiction. *Citing* 51 Am.Jur., *Taxation § 452,* p. 462.

*McKinney,* 504 S.W.2d at 838. This Court has held that the controlling issue is not only the property's presence within the taxing authority's borders, but also the taxpayer's activities within the governmental unit and the opportunities and protections the government affords to those activities. *Texas Gulf Shrimp,* 707 S.W.2d at 192. Here, San Patricio County provided protection to the oil and bore a substantial risk of significant financial injury in the event of a mishap, such as a massive leak or fire.

■ Property will acquire a situs when it has been located in the area with such permanence that it becomes a part of the general mass of property within the boundaries of the taxing authority. *City of Dallas v. Overton,* 363 S.W.2d 821, 825 (Tex. Civ.App.—Dallas 1962, writ ref'd n.r.e.). The Court held that "permanent" means "a more or less permanent location for the time being." *Overton,* 363 S.W.2d at 825, *quoting* Cooley, *Law of Taxation,* § 452

(4th Ed.). More importantly, the word "permanent" must be applied to the particular facts of each case. *Overton,* 363 S.W.2d at 825. We hold that Exxon was properly taxed in the County pursuant to Tex.Tax Code Ann. § 21.02(1) (Vernon 1982). We overrule points one through six.

■ By points of error seven through ten, Exxon complains that the trial court erred when it allowed evidence of, and made findings on, both Exxon's voluntary rendering of and paying taxes on its oil located in the County and the public services provided by the County to Exxon and its personal property. Exxon complains that any rendering of oil and paying of taxes on it in the past is irrelevant to the case at hand. "Relevant evidence" is defined as

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Tex.R.Civ.Evid. 401.

We hold that rendering of property and payment of taxes thereon in years past is relevant to the case at bar. Such historical activity shows the state of mind of Exxon and exhibits its interpretation of the status of the property. It is evidence that Exxon believed the oil located in San Patricio County was of a permanent nature rather than a transitory one. The parties stipulated that Exxon rendered and paid taxes on this type of oil as early as 1945 and continued to do so until 1987. Such evidence tends to make the existence of the fact that the oil remained in San Patricio County for greater than a temporary period of time more probable than it would be without the evidence.

Appellant relies on *City of Dallas v. Texas Prudential Ins. Co.,* 156 Tex. 36, 291 S.W.2d 693, 697 (1956) to support the proposition that the only relevant issue in a tax situs case is the taxable situs of the personal property involved in the *current* dispute. However, *City of Dallas* wholly fails to address this point. In that case, the City claimed that Prudential was estopped to deny its taxable situs in Dallas because the company paid taxes there in the past.

However, the City agreed in the trial court that the sole issue was the taxable situs of the property involved. The court then found that Dallas was not in fact the proper tax situs; therefore, the question of relevance of past tax payments was never addressed.

■ Similarly, the evidence of public services rendered by the County to Exxon's personal property located therein is relevant. The benefits and protections provided by the County to Exxon's personal property makes the existence of the fact that the oil has significant contact with the County more probable than it would be without that evidence. Rendering of public services remains an important element of any determination regarding whether personal property has acquired taxable situs in a particular taxing unit.

The trial court did not err in admitting evidence of and making findings of fact on these points. The findings are material and provide support for the trial court's judgment. We overrule points seven through ten.

■ By points eleven and twelve, Exxon complains that pleadings and evidence do not support the trial court's finding that Exxon's oil was part of the general mass of property located in San Patricio County. Furthermore, Exxon complains that such a finding was against the great weight and preponderance of the evidence. Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.); *see generally* Hall, Standards of Appellate Review in Civil Appeals, 21 St. Mary's L.J. 919 (1990). The trial court's findings of fact are not conclusive when a complete statement of facts appears in the record. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd per curiam*, 699 S.W.2d 199 (Tex.1985). The same standards used to review the factual and legal sufficiency of jury findings are used to review the trial court's findings. *Gill Savs. Ass'n v. Chair King, Inc.*, 783 S.W.2d 674, 676–77 (Tex.App.—Houston [14th Dist.] 1989, no writ); *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492, 497 (Tex. App.—Dallas 1989, no writ).

■ The parties stipulated to the fact that Exxon owned over 400,000 barrels of crude oil located in San Patricio County at all times in 1988 and that any specific barrel of oil remained in the county for seventeen days. They further stipulated that Exxon or its predecessor voluntarily rendered and paid taxes on similar oil located in the County every Tax Year prior to 1988. There is sufficient evidence in the record to support the trial court's finding that Exxon's oil was included in the general mass of property located in San Patricio County in 1988. Similarly, the court's findings are not against the great weight and preponderance of the evidence. We overrule points eleven and twelve.

■ By Exxon's final two points of error, appellant contends that the trial court's finding that it controlled the flow of the oil into and out of the working tanks located in the County is against the great weight and preponderance of the evidence. Exxon further argues that the evidence conclusively establishes that the court's finding is improper. Exxon maintains that because the oil is being transported by Exxon Pipeline Company while it is within the County's boundaries, it has no control over that oil and therefore should not be responsible for taxes on it. Appellant relies on *Crown Central* to support the proposition that once the oil is delivered to a common carrier, it is no longer controlled by the owner and therefore loses tax situs in the county in which it was previously located. However, in *Crown Central* the oil had original situs in Nueces County until it was removed from that county permanently. Under those facts, when the oil left the county, it also left the control of the owner in that county. The Court used a common carrier as an example of one way in which the oil may leave the county permanently and relinquish its taxable situs. *Crown Central* does not hold that the delivery of oil to a common carrier defeats

the establishment of any taxable situs for the oil other than the residence of its owner.

Which related company controlled the oil is not critical. Exxon owned over 400,000 barrels of oil in the county in 1988 and voluntarily paid taxes on that oil in every tax year prior to 1988. Who controls the oil is not the issue; who owns it is.

■ The owner of property which is located in the taxing unit with such permanence as to be considered part of the general mass of property located therein must pay the taxes assessed on its portion of that property. The pipeline company is a wholly owned subsidiary of Exxon and 90% of the oil transported by it was owned by Exxon. Also, the pipeline company or its predecessor has always carried Exxon's oil. We hold that the court's finding that Exxon controlled the oil located in the County was not against the great weight and preponderance of the evidence, nor was it improper. We overrule points thirteen and fourteen.

The judgment of the trial court is AFFIRMED.