ACCEPTED
13-14-00293-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
2/26/2015 3:00:34 PM
DORIAN RAMIREZ
CLERK

NO. 13-14-00293-CV

_____

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
2/26/2015 3:00:34 PM
DORIAN E. RAMIREZ
Clerk

# IN THE COURT OF APPEALS
# FOR THE THIRTEENTH COURT OF APPEALS
# CORPUS CHRISTI & EDINBURG, TEXAS

_____

## SAN PATRICIO COUNTY, TEXAS

*Appellant*

## V.

## NUECES COUNTY, TEXAS AND NUECES COUNTY APPRAISAL DISTRICT

*Appellees*

_____

On Appeal from the 94th Judicial District Court of Nueces County, Texas
Honorable Judge Bobby Galvan, Presiding
Trial Court Cause No. 09-5990-C

_____

## REPLY BRIEF OF APPELLANT,
## SAN PATRICIO COUNTY

_____

John J. Hightower                    OLSON & OLSON, L.L.P.
State Bar No. 09614200               Wortham Tower, Suite 600
jhightower@olsonllp.com              2727 Allen Parkway
Eric C. Farrar                       Houston, Texas 77019
State Bar No. 24036549               Telephone:  (713) 533-3800
efarrar@olsonllp.com                 Facsimile:  (713) 533-3888

## ATTORNEYS FOR APPELLANT
## SAN PATRICIO COUNTY

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. ii

INDEX OF AUTHORITIES.............................................................................iv

I.     INTRODUCTION ...............................................................................1

II.    ARGUMENT AND AUTHORITIES ........................................................3

    A.    Section 72.009 of the Texas Local Government Code provides a remedy when two counties cannot agree "where the boundary line [between them] is located." Nueces County concedes that such a dispute exists with respect to the properties at issue in this lawsuit .....3

    B.    This Court's denial of San Patricio County's petition for mandamus does not bar consideration of the jurisdictional and venue issues ........6

    C.    Nueces County mischaracterizes San Patricio County's claims...........8

    D.    The docks, piers, and similar facilities constructed along the San Patricio County shoreline are a part of San Patricio County .........8

        1.    Under the plain language of the 2003 Judgment, any modification to the shoreline of San Patricio County is a part of San Patricio County ..............................................................9

        2.    The inclusion of docks, piers, and similar facilities as modifications that change the shoreline is consistent with the holdings of the United States Supreme Court and other courts on the same subject .................................................................12

        3.    The inclusion of docks, piers, and similar facilities as modifications that change the shoreline is consistent with the common law rights of riparian owners ....................................15

        4.    Reading the 2003 Judgment as including docks, piers, and similar improvements as modifications that change the shoreline is also consistent with the rules of statutory

construction that governed the Refugio County court's 2003 construction of the boundary statutes ........................................16

5. The common law rules that apply to determine the ownership of land that has become submerged or has accreted is not relevant to the determination of political boundaries ............................19

E. Nueces County's summary judgment evidence was conclusory and constituted a collateral attack on the 2003 Judgment ........................20

F. San Patricio County's summary judgment evidence was competent to prove that industries along its shoreline had constructed artificial modifications to the shoreline and that evidence was conclusive, or alternatively, raised a fact issue as to whether the properties are "a part of San Patricio County." ................................................21

G. Despite its denials to the contrary, Nueces County's summary judgment arguments and evidence constitutes an impermissible collateral attack on the 2003 Judgment ........................................22

H. Although San Patricio County filed suit under §72.009 to determine "where the boundary line is located" with respect to the subject properties, the Nueces County District Court's 2014 judgment did not resolve this issue..............................................................23

III. CONCLUSION AND PRAYER ....................................................24

IV. CERTIFICATE OF COMPLIANCE ............................................25

V. CERTIFICATE OF SERVICE.....................................................26

# INDEX OF AUTHORITIES

**CASES**                                                                                                    **PAGES**

*Adams v. Adams*,
   214 S.W.2d 856 (Tex. Civ. App.—Waco 1948, writ ref'd n.r.e.)..................9, 10

*Brainard v. State*,
   12 S.W.3d 6 (Tex. 1999)..................................................................................16

*Briscoe v. Goodmark Corp.*,
   102 S.W.3d 714 (Tex. 2003) ..........................................................................7

*Chambers v. O'Quinn*,
   242 S.W.3d 30 (Tex. 2007)............................................................................6

*City of Corpus Christi v. Davis,*
   622 S.W.2d 640 (Tex. App.—Austin 1981, writ ref'd n.r.e.) ..........................15

*City of Dallas v. Cornerstone Bank, N.A.*,
   879 S.W.2d 264 (Tex. App.—Dallas 1994, no writ)..........................................18

*City of Galveston v. Menard*,
   23 Tex. 349 (1859)........................................................................................16

*Cleveland T. & V.R. Co. v. Cleveland S.S. Co.*,
   208 U.S. 316, 28 S.Ct. 414 (1908)..............................................................13, 14

*Constance v. Constance*,
   544 S.W.2d 659 (Tex. 1976) ......................................................................10, 20

*Exxon Corp. v. San Patricio County Appraisal Dist.,*
   822 S.W.2d 269 (Tex. App.—Corpus Christi 1991, writ denied)......................18

*Gibson v. Carroll*,
   180 S.W. 630 (Tex. Civ. App.—San Antonio 1915, no writ) ..........................15

*Karpovs v. State of Missouri*,
   663 F.2d 640 (5th Cir. 1981) ........................................................................13

CASES                                                                                    PAGES

*Lesikar v. Moon*,
    237 S.W.3d 361 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)............12

*Nacirema Operating Co. v. Johnson*,
    396 U.S. 212, 90 S.Ct. 347 (1969)....................................................................13

*Reeder v. Wood County Energy, LLC*,
    395 S.W.3d 789 (Tex. 2012) .............................................................................11

*Richter v. Granite Mfg. Co.*,
    107 Tex. 58, 174 S.W. 284 (1915) ....................................................................15

*San Patricio County v. Nueces County*,
    214 S.W.3d 536 (Tex. App.—Corpus Christi 2006), *rev. granted, judgm't
    vacated on other grounds*, 246 S.W.3d 651 (Tex. 2008) ..................................11

*State Highway Dep't v. Gorham*,
    139 Tex. 361, 162 S.W.2d 934 (1942) ..............................................................17

*Texaco Refining & Marketing, Inc. v. Estate of Dau Van Tran*,
    777 S.W.2d 783 (Tex. App.—Beaumont 1989), (applying state law), *judgm't
    vacated*, 497 U.S. 1020, 110 S. Ct. 3266 (1990) ..............................................13

*TH Investments, Inc. v. Kirby Inland Marine, L.P.*,
    218 S.W.3d 173 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).............16

*United States v. River Rouge Improvement Co.*,
    269 U.S. 411, 46 S. Ct. 144 (1926)...................................................................16

*Victory Carriers, Inc. v. Law*,
    404 U.S. 202, 92 S.Ct. 418 (1971)...............................................................12, 13

*W. Maryland Tidewater R. Co. v. City of Baltimore*,
    106 Md. 561, 68 A. 6 (1907) .............................................................................14

**CONSTITUTION AND STATUTES**                                             **PAGES**

**TEX. CONST.**

    Art. V, §3 ....................................................................................................6
    Art. IX, §1 ..................................................................................................17

**TEX. TAX CODE ANN.**

    §41.41 (West, Westlaw through 2013 Sess.).......................................................2
    §42.21 (West, Westlaw through 2013 Sess.).......................................................2

**TEX. LOC. GOV'T CODE ANN.**

    § 72.009(a) (West, Westlaw through 2013 Sess.) ................................................4
    § 72.009(b) (West, Westlaw through 2013 Sess.) ................................................4

## REPLY BRIEF OF APPELLANT,
## SAN PATRICIO COUNTY

San Patricio County, Texas ("San Patricio"), Appellant, files this Reply Brief addressing the arguments made by Appellees, Nueces County and Nueces County Appraisal District in their Brief in Response.

## I.
## INTRODUCTION

Unresolved boundary disputes between San Patricio County and Nueces County have left innocent taxpayers in the untenable position of being taxed by both counties. Those taxpayers include Occidental Petroleum Company (CR 1515-27); Sherwin Alumina Company (CR 1528-38); Kiewit Energy Group (CR 1539-45); Flint Hills Resources, LP (CR 1546-50); Signet Maritime Corporation (CR 1551-54; and Cheniere Energy, Inc. (CR 1555-60) - all of whom own and operate major industrial facilities along the shoreline of San Patricio County.

For example, the Occidental Petroleum Company's ("Oxy's") facility in San Patricio County includes an industrial pier and related facilities that extend out from the shoreline into the La Quinta ship channel as well as submerged land located in the La Quinta ship channel. (CR 1515-27). Oxy's pier and submerged land were included on the tax rolls for both San Patricio County and Nueces County for the tax years 2008, 2010, 2011, and 2012. (CR 1516). Oxy was able to resolve the situation in 2010 and 2011 by successfully persuading the Nueces

County Appraisal Review Board that its pier and submerged land were not taxable in Nueces County.[1] (*Id.*). However, it was forced to file suit to contest the inclusion of its property on the tax rolls of both counties for the years 2008 and 2012.[2] (*Id.*). The other taxpayers are in similar situations. (CR 1528-29; 1539-41; 1546-47; 1551-53; 1555-56).

Chapter 72 of the Texas Local Government Code provides a process for resolving disputes over county boundaries, and San Patricio invoked that process when it filed suit in 2009 to resolve the current dispute over the subject properties. San Patricio's pleadings described the disputes over whether specific properties were in one county or the other and asked for various forms of relief, including a declaration that the subject properties are in San Patricio County. San Patricio County's efforts to achieve a resolution of the ongoing boundary disputes under Chapter 72 have been frustrated to date; first by the granting of Nueces County's motion to transfer venue from the neutral Refugio County District Court to one of

---

[1] The Board's order for the Oxy property for Tax Year 2010 stated "Property should not be taxed in this appraisal district." (CR 1526). The Board's order for Tax Year 2011 stated "not in situs." (CR 1527).

[2] A taxpayer who believes its property has been wrongfully included on the tax roll of a taxing jurisdiction must file a protest with the appraisal review board for the appraisal district that prepared the roll. Tex. Tax Code Ann. §41.41 (West, Westlaw through 2013 sess.). If dissatisfied with the appraisal review board's decision, the taxpayer's only remedy is to file a petition for review with a district court in the county in which the appraisal district is located. Tex. Tax Code Ann. §42.21 (West, Westlaw through 2013 sess.). Where, as here, two different appraisal districts have placed the same property on the tax rolls for their respective counties; the only way the taxpayer can protect itself from the possibility of being taxed by both counties is to pursue appeals in both counties.

its own district courts, and then by the Nueces County District Court's failure to address the merits of the dispute.

This appeal presents two principal issues.

The first issue is whether the Nueces County District Court has jurisdiction and venue over the current disputes between Nueces County[3] and San Patricio County regarding whether specific properties are in one county or the other.

The second issue is whether, assuming the Nueces County District Court had jurisdiction and that venue was proper, it erred in granting Nueces County's motion for summary judgment, denying San Patricio County's motion for summary judgment, and entering a take nothing judgment against San Patricio County, while declining to determine in which of the two counties the subject properties lie.

## II.
## ARGUMENT AND AUTHORITIES

**A.  Section 72.009 of the Texas Local Government Code provides a remedy when two counties cannot agree "where the boundary line [between them] is located."  Nueces County concedes that such a dispute exists with respect to the properties at issue in this lawsuit.**

Nueces County contends that the underlying disputes between the two counties "is not a boundary dispute" for purpose of applying §72.009, arguing that

---

[3]  Nueces County and Nueces County Appraisal District ("NCAD") filed a joint brief in this appeal.  For that reason, and for convenience of reference, in this Reply Brief the two appellees are referenced collectively and in the singular as "Nueces County," except where separate reference is necessary to avoid confusion.

the fact that a judgment was issued in the prior boundary lawsuit makes this a case about interpreting a judgment, not determining county boundaries. (Nueces Brief at p. 18). However, there is nothing in the language of §72.009 that suggests that the existence of a prior judgment renders a future disagreement over boundaries other than a boundary dispute. It is clear that the two counties cannot agree on "where the boundary line is located" with regard to the particular properties at issue and that section 72.009(a) authorizes a county "to bring suit against an adjacent county to establish the common boundary line." Tex. Loc. Gov't Code Ann. §72.009(a) (West, Westlaw through 2013 sess.).[4]

In the original 1972 boundary suit, the Refugio County District Court was required to interpret and apply the statutes defining the boundary between the two counties. The fact that the court was making an "interpretation" did not deprive it of jurisdiction under §72.009. Similarly, the fact that the proper interpretation of the 2003 Judgment is relevant to the resolution of the current dispute does not change the nature of the dispute. In its Brief, Nueces County concedes, as it must, that the parties cannot agree on their mutual boundary despite the existence of the 2003 Judgment. "San Patricio asserts the properties it seeks to tax fall within its boundaries as defined by that judgment. Nueces County and NCAD assert the

---

[4] Section 72.009(b) provides that "[t]he district court has jurisdiction to determine **where the boundary line is located**." Tex. Loc. Gov't Code Ann. §72.009(b) (West, Westlaw through 2013 sess.) (emphasis added).

4

properties do not fall within San Patricio's defined boundary." (Nueces Brief at p. 4).

The 2003 Judgment does not provide for the surveying or marking of the common boundary between San Patricio County and Nueces County. Nor did the judgment define the boundary "by metes and bounds" as suggested on page 34 of Nueces County's brief. Instead, the judgment describes the boundary by reference to the "east bank of the Nueces River … the northerly shorelines of Nueces Bay and Corpus Christi Bay … and the westerly shoreline of Redfish Bay." The judgment also declares, with respect to certain past modifications of the subject shorelines, that areas that were formerly part of the mainland but that have been submerged or detached by dredging remain a part of San Patricio County despite their submersion or detachment.

The 2003 Judgment also anticipates that the shorelines in question will continue to change over time, and establishes a rule for determining the effect of future changes on the common boundary of the two counties. That rule states that "**[n]atural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County.**" (CR 2131). The two counties cannot agree on the application of that clear language to the properties at issue in this lawsuit. This is a dispute over "where the boundary line is located." Section 72.009 provides for the district court in a neutral county to decide "where the

boundary line is located" when two counties cannot agree and thus, it was error for the Refugio County District Court to grant Nueces County's Motion to Transfer Venue.

**B.** **This Court's denial of San Patricio County's petition for mandamus does not bar consideration of the jurisdictional and venue issues.**

Nueces County argues that this Court's previous denial of San Patricio County's mandamus action seeking review of the order transferring venue from Refugio County should be treated as a final determination of the jurisdiction and venue issues, raised in this appeal, under the "law of the case" doctrine. That argument is incorrect for at least three reasons. First, the Texas Supreme Court, and not this Court, is the court of last resort on this issue. Tex. Const. art. V, §3. It is true that the Texas Supreme Court also denied San Patricio County's writ of mandamus. However, it did so without issuing an opinion. A simple denial of a writ of mandamus is not a determination on the merits and does not trigger an application of the law of the case doctrine. *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007). "The writ of mandamus is a discretionary writ, and its denial, without comment on the merits, cannot deprive another appellate court from considering the matter in a subsequent appeal." *Id.* The Texas Supreme Court, the court of last resort, has not issued a decision on the merits and thus the law of the case doctrine does not apply.

6

Second, this Court's two-page memorandum opinion rejecting San Patricio County's writ of mandamus states only that "relator has not shown itself entitled to the relief sought," does not contain the rationale for this Court's decision, and was decided on the incomplete record available at that time.[5]  As explained in San Patricio County's initial brief in this appeal, there have been significant subsequent events in the case that are material to the issues of jurisdiction and venue which were not before this Court in the mandamus proceeding.

Finally, the application of the law of the case doctrine is discretionary and this Court has the authority to revisit its decision on the jurisdiction and venue issues. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716-17 (Tex. 2003).

> The Court has long recognized as an exception to the law of the case doctrine that if the appellate court's original decision is clearly erroneous, the court is not required to adhere to its original rulings. "It would be unthinkable for [the court], after having granted the writ, reconsidered the case, and arrived at the conclusion that the opinion on the former appeal was clearly erroneous, to hold that it is bound by considerations of consistency to perpetuate that error.  Our duty to administer justice under the law, as we conceive it, outweighs our duty to be consistent."
>
> Because application of the law of the case doctrine is discretionary, the court of appeals had the authority to re-visit its jurisdictional decision. Finding clear error in its first decision, it had the power to overturn that first decision on the second appeal. …

---

[5]  It appears from the case citations and quoted case excerpts included in the opinion that the basis for this Court's decision was a conclusion that San Patricio County's pleadings did not raise a claim under §72.009 of the Texas Local Government Code, but there is no discussion of the language used in the pleadings nor any explanation of why the language would be inadequate to demonstrate the existence of a dispute over the two counties' common boundary.

*Id*. For the reasons discussed in San Patricio County's initial Brief and in this Reply Brief, this Court's decision to deny the writ of mandamus was clearly erroneous and the Court should correct that error in this appeal.

**C.     Nueces County mischaracterizes San Patricio County's claims.**

On page 36 of its Brief, Nueces County mischaracterizes San Patricio County's contentions regarding the 2003 Judgment's provision dealing with "**[p]ast and future natural and artificial modifications to the shoreline of San Patricio County**" as requiring that such modification be constructed into the La Quinta ship channel. That is incorrect. San Patricio County has consistently asserted that the 2003 Judgment provides that its boundaries include the area covered by docks, piers and other facilities extending out from the mainland, regardless of where on the shoreline they are constructed. (CR 16). "Past and future natural and artificial modifications to the shoreline of San Patricio County" are defined by the judgment as "a part of San Patricio County" without regard to their particular location along the San Patricio shoreline.

**D.     The docks, piers, and similar facilities constructed along the San Patricio County shoreline are a part of San Patricio County.**

The 2003 Judgment specifically provides that: "[p]ast and future natural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County." Modifications are declared to be a part of San Patricio County whether they occurred in the past or will occur in the future and whether

8

they were caused by the forces of nature or the acts of man. No exceptions are provided.

Docks, piers, and similar facilities extend the shoreline and are under the jurisdiction of San Patricio County. The conclusion that the 2003 Judgment included all forms of modification of the shoreline, including docks, piers, and similar facilities, is supported: a) by the language used in the 2003 Judgment; b) by the decisions and rationale of the United States Supreme Court and other courts that have addressed the question of whether docks, piers, and similar facilities constructed along the shoreline should be treated as a part of the land or of the adjoining body of water; c) by the common law principles underlying the exclusive rights of a riparian owner to construct such docks, piers, and similar facilities out into adjoining bodies of water; and d) by application of the well-recognized rule of construction that the Legislature should not be presumed to have intended an unjust result or one that would lead to confusion in the application of the law.

**1.   Under the plain language of the 2003 Judgment, any modification to the shoreline of San Patricio County is a part of San Patricio County.**

"It is generally held that the legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms." *Adams v. Adams*, 214 S.W.2d 856, 857 (Tex. Civ. App.—Waco 1948, writ ref'd n.r.e.). "Judgments, like other written instruments, are to be construed as a whole toward the end of

9

harmonizing and giving effect to all the court has written." *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976). "Where the language used in a judgment is plain and unambiguous, there is no room for construction or interpretation and it becomes the duty of the courts to declare the effect thereof in the light of the literal meaning of the language therein employed." *Adams*, 214 S.W.2d at 857.

The language of the 2003 Judgment as a whole, and particularly the second paragraph, makes it clear that its intended purpose is to resolve all outstanding issues and declare the "common boundary line between San Patricio County and Nueces County."[6] The Judgment specifically identifies the issue of "whether natural and artificial modifications of the shoreline of San Patricio County form a part of San Patricio County," as an issue whose resolution was necessary to establish the common boundary between the two counties.[7] The 2003 Judgment clearly and succinctly resolves that issue in the next to last paragraph by stating unequivocally that "[p]ast and future natural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County." As a

---

[6] The second paragraph of the 2003 Judgment states: "It is THEREFORE ORDERED, ADJUDGED, AND DECREED that the common boundary line between San Patricio and Nueces Counties is located as follows:…."

[7] In the third and fourth sentences of the first paragraph, the 2003 Judgment states: "The summary judgment left standing for trial the issue of whether natural and artificial modifications to the shoreline of San Patricio County form a part of San Patricio County. On December 17, 2002, the Court tried that issue."

matter of law, the 2003 Judgment is final and not subject to further appeal. Nueces County's efforts to reverse the judgment on the basis that the Court erred in including the provision on modifications of the shoreline were rejected by this Court in 2006. *San Patricio County v. Nueces County*, 214 S.W.3d 536, 543 (Tex. App.—Corpus Christi 2006) *rev. granted, judgm't vacated on other grounds*, 246 S.W.3d 651 (Tex. 2008).[8] This Court wrote:

> Accordingly, we reverse the trial court's judgment granting the bill of review. We render judgment in favor of San Patricio County. We affirm the April 11, 2003 judgment in the boundary suit. That judgment remains in full force and effect as the trial court's final judgment on the merits of the boundary dispute.

*Id*.

The language in the 2003 Judgment, affirmed by this Court, leaves no doubt that the boundaries of San Patricio County include **all modifications** of the San Patricio shoreline on Nueces and Corpus Christi Bays, past or future, whether they were the result of natural forces or the acts of man. The words used in the Judgment are construed in accordance with their plain meaning. *Reeder v. Wood County Energy, LLC*, 395 S.W.3d 789, 794-95 (Tex. 2012). "Common words should be given their plain meaning unless the context indicates the words were used in another sense." *Lesikar v. Moon*, 237 S.W.3d 361, 367 (Tex. App.—

---

[8] San Patricio County sought review in the Supreme Court. Nueces County did not seek review of the boundary determination.

Houston [14th Dist.] 2007, pet. denied). Morevover, the 2003 Judgment declares the rule that past and future artificial modifications of the shoreline are part of San Patricio County, without stating any exceptions. Had the Court intended to exclude certain types of modifications – for instance, the construction of docks, piers, and similar facilities – it could easily have crafted language to that effect.

The boundary line between San Patricio County and Nueces County in the areas in question is declared by statute and the 2003 Judgment to be the northern shoreline of Nueces Bay and Corpus Christi Bay. The statutes and the 2003 Judgment apportioned the waters of the bays to Nueces County and the shoreline to San Patricio County. Docks, piers, and similar facilities extend the shoreline and are under the jurisdiction of San Patricio County.

> **2. The inclusion of docks, piers, and similar facilities as modifications that change the shoreline is consistent with the holdings of the United States Supreme Court and other courts on the same subject.**

A recurring issue in maritime law is whether a worker who is injured on a dock, pier, or similar facility, while loading or unloading a ship was injured on the land or the water for the purpose of applying the remedies available under maritime law. *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 206-07, 92 S.Ct. 418, 422 (1971). The United States Supreme Court, and other courts who have considered the issue, have consistently held that for the purpose of determining maritime jurisdiction, a dock, pier, or similar facility is treated as an extension of

12

the land.  *Cleveland T. & V.R. Co. v. Cleveland S.S. Co.*, 208 U.S. 316, 320-321, 28 S.Ct. 414, 416 (1908); *Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 214-215, 90 S.Ct. 347, 349-50 (1969); *Karpovs v. State of Missouri*, 663 F.2d 640, 648 (5th Cir. 1981); *Texaco Refining & Marketing, Inc. v. Estate of Dau Van Tran*, 777 S.W.2d 783, 789 (Tex. App.—Beaumont 1989), (applying state law), *judgm't vacated*, 497 U.S. 1020, 110 S. Ct. 3266 (1990).  The United Supreme Court has written:

> The maritime law was thought to reach '(e)very species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters * * *.' … But, accidents on land were not within the maritime jurisdiction as historically construed by this Court.  **Piers and docks were consistently deemed extensions of land**; injuries inflicted to or on them were held not compensable under the maritime law. … The gangplank has served as a rough dividing line between the state and maritime regimes.

*Victory Carriers*, 404 U.S. at 206-07, 92 S.Ct. at 422 (internal citation omitted and emphasis added).

> **Since long before the Longshoremen's Act was passed, it has been settled law that structures such as wharves and piers, permanently affixed to land, are extensions of the land.**  Thus, literally read, a statute that covers injuries 'upon the navigable waters' would not cover injuries on a pier even though the pier, like a bridge, extends over navigable waters.

*Nacirema Operating Co.*, 396 U.S. at 214-15, 90 S.Ct. at 349-50 (emphasis added).

> But the **bridges, shore docks, protection piling, piers, etc., pertained to the land**.  They were structures connected with the shore and immediately concerned commerce upon land.  None of these structures were aids to

13

navigation in the maritime sense, but extensions of the shore and aids to commerce on land as such.

*Cleveland S.S. Co*., 208 U.S. at 320-21, 28 S.Ct. at 416 (emphasis added). The legal principles underlying the maritime law principle that docks, piers, and similar facilities are an extension of the land to which they are attached are equally applicable to the 2003 Judgment.

Early in the last century, the Maryland Court of Appeals had occasion to address the same issue of whether the construction of docks, piers, and similar facilities had the effect of extending the shoreline for the purpose of determining the boundary of a governmental entity. *W. Maryland Tidewater R. Co. v. City of Baltimore*, 106 Md. 561, 68 A. 6 (1907). The Court concluded the piers in question were subject to the jurisdiction of the City of Baltimore, whose boundaries were defined as the land side of the shoreline, rather than the County of Baltimore, whose boundaries were defined as the river side of the shoreline. The court supported its conclusion by referencing: a) the rights of riparian owners of the land along the shoreline to construct the facilities (*Id.* at 9); b) the fact that a rational Legislature would never have intended that the piers be treated for taxation purposes as if they were cut in two at the point of the high-water mark (*Id.* at 10); c) the fact that the piers would be useless if not connected to the land (*Id.*); and d) the fact that the piers were so situated as to be entirely dependent on the City of

14

Baltimore for police and fire protection (*Id.*). The same logic and principles apply to the 2003 Judgment in this case.

**3. The inclusion of docks, piers, and similar facilities as modifications that change the shoreline is consistent with the common law rights of riparian owners.**

The right to construct docks, piers, and similar facilities is a right included with the ownership of property abutting the natural shoreline. *City of Corpus Christi v. Davis,* 622 S.W.2d 640, 646 (Tex. App.—Austin 1981, writ ref'd n.r.e.). "Littoral rights are appurtenant to the land which borders a lake or sea." *Id.* "Littoral rights, at common law, consist of the right of access to the water, the right to any accretions, and the right to build wharves, docks, and piers." *Id.*; *accord Gibson v. Carroll*, 180 S.W. 630, 632 (Tex. Civ. App.—San Antonio 1915, no writ).

The right of a riparian owner to construct docks, piers, and similar facilities arises out of the ownership of the abutting shoreline, not the water. "These rights all pertain to the use of abutting land in connection with the water, or of the water in connection with the land. The right to use beyond the low-water mark rests upon the title to the bank, and not to the bed of the water." *Richter v. Granite Mfg. Co.*, 107 Tex. 58, 63, 174 S.W. 284, 286 (1915). "The right is incident to the land - belongs to it by nature. We have not found any case holding that it may be severed from the right to the abutting land, so as to become a right in gross; one

15

person owning exclusively the shore, and another the riparian[9] right incident to it, though owning no shore." *Id.* "[T]he right to construct moles or piers; i.e. to *wharf out,* belonged to the owner of the adjacent land." *City of Galveston v. Menard,* 23 Tex. 349, 375 (1859); *see also*, *United States v. River Rouge Improvement Co.*, 269 U.S. 411, 418, 46 S. Ct. 144, 147-48 (1926) (holding that absent controlling local law limiting the rights of a riparian owner, that owner has access from the front of his land to the navigable part of the stream, and may construct landings, wharves or piers for this purpose). The law's treatment of riparian owners recognizes that the construction of docks, piers, and similar facilities is an enhancement and extension of the owner's rights in the shoreline, not of any ownership in the lands underlying the water. Likewise, the 2003 Judgment includes docks, piers, and similar facilities as modifications that change the shoreline.

4. **Reading the 2003 Judgment as including docks, piers, and similar improvements as modifications that change the shoreline is also consistent with the rules of statutory construction that governed the Refugio County court's 2003 construction of the boundary statutes.**

---

[9] The term "littoral" means "belonging to the shore," and a "littoral owner" is one whose land borders an ocean, sea, or lake. *Id.* at 21 n.7; *see e.g.*, *TH Investments, Inc. v. Kirby Inland Marine, L.P.*, 218 S.W.3d 173, 182 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The term "riparian" means "belonging or relating to the bank of a river or stream." *Brainard v. State*, 12 S.W.3d 6, 15 n.2 (Tex. 1999). A "riparian owner" is one whose land is bounded by a river. *Id.*

It must be assumed that the Court, in crafting its Final Judgment was aware of the legal principles governing statutory construction, including the presumption that the Legislature did not intend to do an unjust thing or to cause confusion.[10] *State Highway Dep't v. Gorham*, 139 Tex. 361, 366, 162 S.W.2d 934, 936 (1942).

> A statute will not be construed so as to ascribe to the Legislature an intention of doing an unjust thing by its enactment, or of causing confusion thereby, if the statute is reasonably susceptible of a construction showing the Legislature's intention to have been otherwise.

*Id.* at 936. An interpretation of the relevant statutes as allowing Nueces County to tax docks, piers, and similar facilities constructed along the shoreline of Nueces Bay and Corpus Christi Bay, under circumstances where it would be impractical for Nueces County to provide any governmental services to those improvements, would be unjust. It would also create unnecessary and harmful confusion in the administration of the tax laws, the provision of public services, and the determination of the jurisdiction of peace officers, and of courts. In each case, the determination of jurisdiction would turn on whether the incident occurred on the portion of the facility that was constructed on dry land or the portion that extends out from the land. In the case of taxation, the owners would be burdened by taxation of the same facilities by both counties and interminable battles over the proper allocation of their taxable values. "We do not interpret a statute in a

---

[10] In Texas, counties are created by statute. Tex. Const. art. IX, §1.

17

manner that will lead to a foolish or absurd result when another alternative is available." *City of Dallas v. Cornerstone Bank, N.A.*, 879 S.W.2d 264, 270 (Tex. App.—Dallas 1994, no writ).

As a practical matter, only San Patricio County has provided or can provide meaningful governmental services to the docks, piers, and other facilities constructed along its shoreline.[11] Also, a reading of the 2003 Judgment as including docks, piers, and similar facilities as "modifications of the shoreline" provides a bright line test for determining the jurisdiction of law enforcement officials and taxing entities. If an incident happens on a dock, pier, or similar facility along the shoreline of San Patricio County, the courts and officials of San Patricio County have jurisdiction. If the same incident occurs in the waters of the bay, Nueces County courts and officials have jurisdiction. The statutes setting out the boundaries between the two counties and the 2003 Judgment declaring those boundaries give San Patricio County the mainland and give Nueces County the waters of the bay. Docks, piers, and similar facilities are constructed to serve the land to which they are attached, under rights that belong exclusively to the owner of that land. Consistent with those principles, the 2003 Judgment provides that all modifications of the shoreline are under the jurisdiction of San Patricio County.

---

[11] A county's jurisdiction to tax personal property is dependent, in part, on the degree to which the county provides public services for that property's benefit. *Exxon Corp. v. San Patricio County Appraisal Dist.,* 822 S.W.2d 269 (Tex. App.—Corpus Christi 1991, writ denied). "Rendering of public services remains an important element of any determination regarding whether personal property has acquired taxable situs in a particular taxing unit." *Id.* at 274.

**5. The common law rules that apply to determine the ownership of land that has become submerged or has accreted is not relevant to the determination of political boundaries.**

Nueces County argues that the common law rules applicable to the determination of the ownership of submerged or accreted land should be applied to the determination of governmental boundaries. (Nueces Brief at p. 37). That argument misses the point. The boundary at issue in this case is a political boundary, and the ownership of land is immaterial. The three case that Nueces County cites all involve the question of whether a property owner who modifies the shoreline by artificial means acquires title to formerly submerged land as against the state, an issue not presented in this case involving the political boundary between two counties.

The 2003 Judgment specifically states a different rule for determining the political boundaries between the two counties in this case.[12] It declares that artificial modifications to the shoreline change the political boundaries between the two counties. The judgment is final and provides the rule of law for determining the common boundary between the two counties. Moreover, as discussed above, there are sound public policy reasons for employing a different rule for determining political boundaries as opposed to ownership interests.

---

[12] Even if Nueces County were correct, and the common law rule concerning title should have been applied by the Refugio County District Court, Nueces County's complaint would be that the 2003 Judgment contains an error. That complaint would be an impermissible collateral attack on a final judgment. (See San Patricio County's Brief as Appellant at pp. 26-27).

**E.** **Nueces County's summary judgment evidence was conclusory and constituted a collateral attack on the 2003 Judgment.**

Nueces County cites the affidavit testimony of Michael Haas, a registered surveyor as conclusively establishing that the subject properties are not in San Patricio County. It does not. Although Haas is a surveyor and purports to rely on his expertise in the field, he did not perform any survey work. More specifically, Haas did not perform any of the three activities of surveyors that Nueces County lists on page 33 of its Brief. Haas did not: a) "determine by survey" the location of any land; b) "calculate area and prepare field note descriptions of surveyed and unsurveyed land"; or c) prepare maps showing survey work. In fact, there is not a single mention in his affidavit of any survey that he or anyone else performed regarding the location of the county boundary, the La Quinta ship channel, Donnell or Ingleside Points, or any of the properties in question.

His testimony consists entirely of: a) opinions on how some portions of the 2003 Judgment should be construed and how others should be ignored; and b) conclusory statements regarding the location of property, unsupported by any survey work or analysis.[13] The proper construction of a judgment is a question of law and Haas' opinion on the subject is immaterial. *Constance v. Constance*, 544 S.W.2d 659 (Tex. 1976).

---

[13] In its brief, in the last sentence on page 32, Nueces County asserts that Haas identifies property by metes and bounds in his affidavit. In fact, Haas' affidavit does not contain any relevant metes and bounds descriptions. (CR 2211-24).

**F.** **San Patricio County's summary judgment evidence was competent to prove that industries along its shoreline had constructed artificial modifications to the shoreline and that evidence was conclusive, or alternatively, raised a fact issue as to whether the properties are "a part of San Patricio County."**

San Patricio County presented the affidavit testimony of representatives of property owners who own property along is shoreline and who have constructed docks, piers, and similar facilities. That testimony described the nature and location of their facilities with respect to the shoreline and the waters of La Quinta ship channel. The representatives of the property owners testified as to the facts of which they had personal knowledge, not as experts. Similarly, the chief appraiser of the San Patricio County Appraisal District and the Sheriff of San Patricio County testified in their affidavits to relevant facts as to which they had knowledge.

San Patricio County's summary judgment evidence established that: a) artificial modifications have been made to its shoreline; and b) San Patricio County is the only county that provides services to the shoreline and the improvements constructed along that shoreline. That evidence was uncontradicted. San Patricio County also presented competent evidence that some of the submerged properties in question are located in the waters of the La Quinta ship channel or were once a part of the mainland of San Patricio County. At the very least, that evidence raised

a fact issue the resolution of which is necessary to a determination of "where the boundary line is located."

**G.  Despite its denials to the contrary, Nueces County's summary judgment arguments and evidence constitutes an impermissible collateral attack on the 2003 Judgment.**

In its Brief, Nueces County tells the Court that it abandoned its collateral attack on the 2003 Judgment when it filed its amended motion for summary judgment and that any discussion of that attack is now immaterial. (Nueces Brief at p. 21). However, its pleadings at the time the amended motion was filed, the summary judgment evidence it submitted with the amended motion, the arguments it made in its amended motion, and the arguments it makes in its brief to this Court demonstrate the contrary.

Nueces County's active pleading at the time its amended motion for summary judgment was its Third Amended Original Answer and Cross-Claim. (CR 1381-94). In its answer, Nueces County collaterally attacks the portion of the 2003 Judgment that declares that "[p]ast and future natural and artificial modifications to the shoreline of San Patricio County shall form a part of San Patricio County." Nueces County alleges, inter alia, that the Court was without jurisdiction to make that declaration because that issue was not property before it. (*Id*. at 1383-84).

The evidence submitted by Nueces County in support of its motion for summary judgment also confirmed that its defense to San Patricio County's claims constituted a collateral attack on the 2003 Judgment. That evidence included pleadings and the Reporter's Record from the bench trial in the 1972 lawsuit. It also included the affidavit of Michael Haas, in which he stated that he had reviewed selected records from the 1972 lawsuit in forming the opinions he expressed in that affidavit.

Finally, in Nueces County's amended motion itself, Nueces County asserts a direct challenge to the 2003 Judgment when it states, in direct contravention of the Judgment, that it has authority to tax property that has been added to San Patricio County by "natural or artificial modification of the shoreline." (CR 2124).

**H. Although San Patricio County filed suit under §72.009 to determine "where the boundary line is located" with respect to the subject properties, the Nueces County District Court's 2014 judgment did not resolve this issue.**

San Patricio County filed this suit under authority of §72.009 in order to resolve the ongoing boundary dispute between the two counties over the subject properties. The dispute is real and innocent taxpayers are caught in the middle and forced to file multiple lawsuits every year in an attempt to avoid double taxation. Section 72.009(b) gives the designated court "jurisdiction to determine where the boundary line is located." The Nueces County District Court dismissed the case

without making that determination and thus failed to carry out its responsibilities under the statute.

## III.
## CONCLUSION AND PRAYER

The law provides that boundary disputes between adjoining counties must be decided by the courts of a neutral county. This case should not have been transferred to the Nueces County District Court, and that court lacks jurisdiction to resolve the dispute. This Court should reverse the decision of the Nueces County District Court and remand the case with instructions to transfer it back to the Refugio County District Court for further proceedings.

Alternatively, this Court should reverse the judgment of the Nueces County District Court and render judgment that the docks, piers, and other improvements that have been constructed on the shoreline of San Patricio County are a part of San Patricio County, and outside the jurisdiction of Nueces County, and that any submerged lands that were once a part of San Patricio County remain so regardless of the current condition.

Finally, if the Court finds that there are fact issues necessary to the determination of "where the boundary is located," it should reverse the trial court's judgment and remand the case to the trial court with instructions to make the required determination.

Respectfully submitted,

**OLSON & OLSON, L.L.P.**

By: /s/ John J. Hightower
John J. Hightower
State Bar No. 09614200
jhightower@olsonllp.com
Eric C. Farrar
State Bar No. 24036549
efarrar@olsonllp.com
2727 Allen Parkway
Houston, Texas 77019
Telephone: (713) 533-3800
Facsimile: (713) 533-3888

**ATTORNEYS FOR PLAINTIFF,
SAN PATRICIO COUNTY, TEXAS**

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing Reply Brief of Appellant has a word count of 6,279.

/s/ John J. Hightower
John J. Hightower

25

# CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties to this appeal, through their respective counsel of record, on February 26, 2015 as follows:

**Attorney for Appellee,**
**Nueces County, Texas**

Douglas E. Chaves                                    *Via electronic service*
802 N. Carancahua, Suite 2100
Corpus Christi, Texas 78470
dchaves@crrlawfirm.com

**Attorneys for Appellee,**
**Nueces County Appraisal District**

Tom C. Wheat                                         *Via electronic service*
101 N. Shoreline Boulevard, Suite 201
Corpus Christi, Texas 78401
twheat@wheatlaw.com

Audrey Mullert Vicknair                              *Via electronic service*
802 N. Carancahua Ste. 1350
Corpus Christi, Texas 78401-0022
avicknair@vicknairlaw.com

/s/ John J. Hightower
John J. Hightower