**ALASKA FLIGHT SERVICES, LLC, Appellant**

v.

**DALLAS CENTRAL APPRAISAL DISTRICT, and Dallas County Appraisal Review Board, Appellees.**

No.  05–07–00082–CV.

Court of Appeals of Texas, Dallas.

Aug. 26, 2008.

James D. Struble, Andrew D. Graham, Jackson Walker, L.L.P., Dallas, for Appellant.

Michael Allan Lang, Peter G. Smith, Nichols, Jackson, Dillard, Hager & Smith, L.L.P., Dallas, for Appellee.

Before Justices FITZGERALD, LANG-MIERS, and MAZZANT.

## OPINION

Opinion by Justice FITZGERALD.

This case involves an ad valorem tax dispute. In administrative proceedings before the Dallas County Appraisal Review Board (the "ARB") and again in the trial court, Alaska Flight Services, LLC ("AFS") challenged the State of Texas's jurisdiction to tax one of AFS's business aircrafts (the "Aircraft") for tax year 2002. The trial court rendered judgment in favor of the Dallas Central Appraisal District ("DCAD") and the ARB, concluding AFS did owe property taxes on the Aircraft for the relevant year. In a single issue, AFS contends the trial court erred in finding jurisdiction to tax the Aircraft. We affirm the trial court's judgment.

### THE AIRCRAFT

AFS, a Texas limited liability company with its principal place of business in Dallas, acquired the Aircraft in August 2001. According to flight logs in evidence, the Aircraft was operated and based in Colorado for most of 2001. While AFS owned it, the Aircraft made forty-two total departures in 2001; according to the trial court's findings, ten of those departures were from Texas.[1] On November 11, 2001, the Aircraft was flown to Dallas Love Field so it could be readied for lease. AFS leased the Aircraft to an Alaskan company for thirty-six months effective January 1, 2002. On January 11, 2002, after its repairs and modifications were completed at Love Field, the Aircraft was flown directly to Alaska. Other than the single flight on January 11, all of the Aircraft's 254 departures in 2002 were from locations within the state of Alaska.

### THE PLEA TO THE JURISDICTION

DCAD filed a plea to the jurisdiction in the trial court. DCAD argued the trial court lacked jurisdiction to entertain AFS's appeal of the ARB's ruling, because AFS had not exhausted its administrative remedies. Specifically, DCAD argued AFS had failed to comply with the tax code's requirement that—in order to ap-

---

1. AFS asserts the correct number of Texas departures is nine, not ten. The variance makes no difference in our analysis.

peal the administrative ruling—it must pay the undisputed amount of taxes due on the aircraft. *See* TEX. TAX CODE ANN. § 42.08(b) (Vernon 2008). The trial court conducted a hearing on the plea but continued the hearing until the day of trial. Following trial, the trial court denied the plea but ruled in DCAD's favor on the question of jurisdiction to tax. Both rulings were incorporated into the final judgment. DCAD did not file a notice of appeal. In its appellate brief, DCAD asks us to dismiss the entire case for lack of jurisdiction based on the grounds raised in its plea to the jurisdiction. Because DCAD seeks to alter the judgment of the trial court, it was required to file a notice of appeal in this Court. *See* TEX.R.APP. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal."); *see also City of Houston v. Boyle,* 148 S.W.3d 171, 180 n. 5 (Tex.App.-Houston [1st Dist.] 2004, no pet.). It did not. Accordingly, we do not address DCAD's arguments in this Court.

### JURISDICTION TO TAX THE AIRCRAFT

The Constitution of the State of Texas provides that "all real property and tangible personal property in this State … shall be taxed in proportion to its value." TEX. CONST. art. VIII, § 1.

### The State's Authority to Tax Personal Property

The limits of the state's taxing jurisdiction over tangible personal property are found in the tax code's section 11.01:

(c) This state has jurisdiction to tax tangible personal property if the property is:

> (1) located in this state for longer than a temporary period;
> (2) temporarily located outside this state and the owner resides in this state; or
> (3) used continually, whether regularly or irregularly, in this state.

(d) Tangible personal property that is operated or located exclusively outside this state during the year preceding the tax year and on January 1 of the tax year is not taxable in this state.

TEX. TAX.CODE § 11.01(c), (d). These two sections, read together, describe the extent of the state's authority to tax tangible personal property: property that falls within the categories described in section (c) may be taxed; property that falls within section (d) may not be taxed. Generally speaking, based on these sections, Texas courts have concluded jurisdiction to tax exists based on the length of time property is located within Texas. *See, e.g., Fairchild Aircraft, Inc. v. Bexar Appraisal Dist.,* 47 S.W.3d 577, 580 (Tex.App.-San Antonio 2001, no pet.).

The trial court found Texas had the authority to tax the Aircraft for tax year 2002, because the Aircraft "was used continually, whether regularly or irregularly, in this state during tax year 2001." *See* TEX. TAX CODE § 11.01(c)(3). The court's conclusion was based on its finding that the Aircraft "had 23.8 percent of its departures from Texas during 2001." The court stressed at trial that it believed the decision as to whether the Aircraft was continually used in this state must be made by looking back to the year before the tax year at issue. AFS challenges the trial court's jurisdiction conclusion on two levels, contending: (1) the court should have determined whether the Aircraft was "used continually" by looking at events during the tax year itself, not the year before; and (2) whether one looks at events in 2001 or 2002, the Aircraft was not "used continually" in Texas.

### Standard of Review

Statutory construction is a question of law; we review the trial court's

jurisdiction conclusion under section 11.01(c)(3) de novo. *See State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006). When construing a statute, we begin with its language. *Id.* If the statute is unambiguous, we apply its words according to their common meaning. *Id.* However, we must look to the words in the context of the remainder of the statute to discern the true meaning of a provision. *Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 133 (Tex.1994).

### The Relevant Year

■ Our first concern is to discern the time period with which section 11.01(c)(3) is concerned. Before we can determine whether the Aircraft was "used continually," we must determine which year's usage is at issue. We agree with the trial court's position that the tax code, generally speaking, looks to the year before the taxable year to make determinations. One significant reason for this backward-looking posture is the requirement that property be appraised for ad valorem tax purposes as of January 1 of the taxable year. *See* Tex. Tax Code § 23.01. If the legislature intended the appraisal process to be completed as of the first day of the taxable year, then the appraising unit must determine by January 1 whether it has jurisdiction to tax the property at issue. Section 11.01(c) could be applied as of January 1 only if the location of the property on January 1 was the only factor of consequence, or the appraisal was intended to be based on the circumstances of the year before the taxable year. Nothing in the language of section 11(c) is compatible with looking at a one-day snapshot to determine jurisdiction; each subsection includes language referring to periods of time, not to January 1. *See id.* § 11.01(c) (language including "longer than a temporary period," "temporarily located outside this state," and "used continually, whether regularly or irregularly"). On the other hand, the language of section 11.01(d) does include a reference to January 1, but it actually supports the trial court's reading when it identifies non-taxable personal property as "[t]angible personal property that is operated or located exclusively outside this state *during the year preceding the tax year* and on January 1 of the tax year." *See id.* § 11.01(d) (emphasis added). It is reasonable to conclude the legislature intended the same time period to be used to determine whether personal property is taxable (section 11.01(c)) or is not taxable (section 11.01(d)).

AFS urges us to follow *Rockdale Independent School District v. Thorndale Independent School District,* 681 S.W.2d 225, 228 (Tex.App.-Austin 1984, writ ref'd n.r.e.), which looks to the number of days in the tax year that the property at issue (certain construction equipment) was located in each of the school districts in order to determine its tax situs. But the *Rockdale* court was identifying the tax situs of the construction equipment, not the state's jurisdiction to tax the equipment in the first instance. More significantly for our purposes, the court was interpreting a statute with an entirely different standard. That statute declares in relevant part that tangible personal property is taxable by a taxing unit if "it is located in the unit on January 1 for more than a temporary period." Tex. Tax.Code § 21.02(a)(1). The *Rockdale* analysis addresses a different legal standard; it does not persuade us to look to the tax year, rather than the preceding year, for our determination of jurisdiction.[2]

---

2. Moreover, as AFS candidly discloses, other courts have concluded, even when addressing the same situs provision *Rockdale* addresses, that it is proper to look to the year preceding the tax year to determine the status of person-

We conclude the trial court correctly looked to 2001, the year preceding tax year 2002, to determine whether the aircraft was used continually in the state of Texas under section 11.01(c)(3).

### *"Used Continually"*

■ We turn next to the meaning of the phrase "used continually, whether regularly or irregularly, in this state." *See id.* § 11.01(c)(3). Neither the phrase as a whole, nor any of its component parts, is defined by the tax code. The word "continually" is the specific point of contention in this appeal.[3] We find no Texas opinions addressing its meaning in the context of this or related statutes. Accordingly, according to well-settled principles, we look first to the plain meaning of the word. *Shumake,* 199 S.W.3d at 284; *see also* Tex. Gov't Code Ann. § 312.002 (Vernon 2005) ("words shall be given their ordinary meaning"). AFS sets forth the dictionary's preferred definition for "continual" as "continuing indefinitely in time without interruption." Webster's Ninth New Collegiate Dictionary 284 (1985). AFS accepts and argues for this definition. However, the definition has at least two serious problems in the context of the tax code.

Our first problem with the proposed definition is the time period it embraces. If this definition were applied to section 11.01(c)(3), jurisdiction would lie only if personal property were used in Texas "indefinitely in time." *See id.* Jurisdiction is clearly addressed by the tax code in terms of a single tax year. The parties accept this premise. AFS raises no argument to the contrary. Indeed, when AFS restates the definition and urges this Court to adopt it, it omits this element of the definition without explanation.

Our second problem is the definition's requirement that the use of the property be "without interruption." AFS embraces this element of the definition, arguing that "used continually" must mean "used in Texas without interruption, i.e., not used outside of Texas at all, no matter how much the property is used in Texas." But this portion of the definition is at odds with the use of "continually" in other portions of the same or related statutes. "Words in a vacuum mean nothing." *Bridgestone/Firestone,* 878 S.W.2d at 133. We must look to the word in the context of the remainder of the statute to discern the true meaning of a provision. *Id.*

We look, therefore, to the same language in related statutes to test AFS's reliance on the phrase "without interruption." We need look only to section 21.055(a) of the tax code, the provision dealing with allocation of taxes for a business aircraft, to illustrate the problem with AFS's position:

> If an aircraft is used for a business purpose of the owner, is taxable by a taxing unit, and is *used continually outside this state,* whether regularly or irregularly, the appraisal office shall allocate to this state the portion of the fair market value of the aircraft that fairly reflects its *use in this state.*

Tex. Tax Code § 21.055(a) (emphasis added). Thus, an aircraft can be "used continuously outside" Texas and still be "use[d] in" Texas. *See id.* Such an aircraft shall have a portion of its fair market value allocated to Texas, reflecting the portion of its use that occurred in Texas. *Id.* And

---

al property. *See, e.g., Patterson–UTI Drilling Co. LP, LLLP v. Webb County Appraisal Dist.,* 182 S.W.3d 14, 18 (Tex.App.-San Antonio 2005, no pet.); *Fairchild Aircraft,* 47 S.W.3d at 581.

**3.** Neither of the parties questions the meanings of "used" or "whether regularly or irregularly" in this proceeding.

this statute goes on to state the presumptive measure of the allocable portion will be based on the number of departures by the aircraft from this state. *Id.* § 21.055(b). Thus, the tax code foresees situations in which an aircraft takes off from Texas some number of times, but is nevertheless "used continually outside this state." *See id.* AFS would certainly characterize such a situation as "interrupted" use in Texas. But it is apparent the tax code does not intend continual use of personal property to be destroyed by such interruptions.

Our reading of these statutes is supported by at least one court, which has equated the statutory "used continually" language with "use in Texas only part of the time." *Harris County Appraisal District v. Texas Eastern Transmission Corp.*, 99 S.W.3d 849 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) is an allocation case. In that case, the court stated the following:

> There is no dispute that an owner of a business aircraft *used in Texas only part of the time* is entitled to receive an interstate allocation. *See* Tex. Tax Code Ann. § 21.03 (personal property *used continually outside of state*).... Tex. Tax Code Ann. § 21.055 (business aircraft ...).

*Id.* at 850–51 (emphasis added). We conclude "continually" cannot mean "exclusively" or "without interruption" as AFS contends.

■ Unfortunately, if we begin with the dictionary definition urged by AFS and we delete both "indefinitely in time" and "without interruption," we are left with the single word "continuing." To escape this circular path ("continual" means "continuing"), we look to the common meaning of the root word at issue: continue. The dictionary tells us the word can convey any of four meanings:

> 1: to maintain without interruption a condition, course, or action (the boat *continued* downstream);
>
> 2: to remain in existence; endure (the tradition *continues*);
>
> 3: to remain in a place or condition; stay (cannot *continue* here much longer);
>
> 4: to resume an activity after interruption (we'll *continue* after lunch).

Webster's Ninth New Collegiate Dictionary 284 (1985). The general rule in Texas is that jurisdiction to tax exists based on the length of time property is located within the state. *See Fairchild Aircraft*, 47 S.W.3d at 580. Accordingly, we conclude the dictionary's third meaning of "continue," is most appropriate for our analysis. That third meaning addresses presence in a location rather than movement (the first meaning), or endurance (the second), or resumption of activity (the fourth). In selecting this meaning, however, we remember the limits on presence in a location that we have addressed herein, i.e., the limit on time and the limit on exclusivity.

■ We conclude, in the application of section 11.01(c)(3), "continually" means while present in this state, though not necessarily exclusively, for some period of the tax year. And we conclude that personal property is "used continually, whether regularly or irregularly, in this state" if the property is used while it is present in this state, during the tax year; that use can be regular or irregular in pattern or amount, so long as the property is used over the course of the tax year.

### Use Of AFS's Aircraft

■ Finally, AFS argues that even if we look to the events of 2001 to determine jurisdiction, it did not use the Aircraft continually in Texas that year. An aircraft is used, at a minimum, each time it takes

off and is flown to another location. The trial court found AFS's Aircraft took off from Texas at least nine times during the relevant period. Those nine departures amounted to more than twenty-three percent of the Aircraft's total departures during that period. AFS's sole argument here is that "a mere nine (9) departures from Texas out of forty-two (42) total departures in 2001 simply does not equate with being 'used continually' in Texas." We disagree. The Aircraft was present in Texas and was used here during 2001. Nine of forty-two is a significant percentage of departures from Texas during the period. Moreover, the Aircraft was present in Texas while it was repaired and modified in preparation for the 2002 lease. We agree with the trial court that the Aircraft was used continually in this state. *See* TEX. TAX CODE § 11.01(c)(3).[4] Thus, the state had jurisdiction to tax the Aircraft for tax year 2002.

## CONCLUSION

AFS does not challenge any part of the trial court's judgment other than the jurisdictional basis of the tax imposed. Accordingly, having determined the state has jurisdiction to tax the aircraft for tax year 2002, we need not go farther. We resolve AFS's issue against it, and we affirm the judgment of the trial court.

---

**4.** Having reached this conclusion, we need not address any other possible basis for jurisdiction to tax the aircraft. *See, e.g.,* TEX. TAX CODE § 11.01(c)(1) (state has jurisdiction to tax personal property "located in this state for longer than a temporary period").