**Affirmed and Opinion Filed May 5, 2020**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01520-CV

**DALLAS CENTRAL APPRAISAL DISTRICT AND DALLAS COUNTY APPRAISAL REVIEW BOARD, Appellants**
**V.**
**NATIONAL CARRIERS, INC. AND NCI LEASING, INC., Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-04548**

## MEMORANDUM OPINION

Before Justices Bridges, Whitehill, and Nowell
Opinion by Justice Nowell

This is an appeal from judicial review of an appraisal review board order upholding a business personal property tax on commercial trucks. After a bench trial, the trial court granted the taxpayers relief. The appraisal district and review board appeal arguing that the taxpayers' trucks were subject to business personal property taxation in Dallas County. We conclude the evidence supports the trial court's findings of fact and the trucks were not subject to personal property taxation in Dallas County for tax-year 2016. We affirm the trial court's judgment.

**Background**

National Carriers, Inc. is a Kansas corporation with its headquarters and principal place of business in Liberal, Kansas. It specializes in provision of refrigerated transportation services for its parent company and other customers. The trucks operated by National Carriers are owned by NCI Leasing, Inc. and leased by National Carriers. National Carriers is an irregular-route carrier, meaning its drivers do not travel fixed routes on a repeated basis. As they complete a shipment, drivers are assigned another nearby shipment based on customer needs. Trucks operated by National Carriers are kept on the road and at any given time are scattered throughout the United States. It is possible National Carriers might service the same route more than once, but unlikely it would do so with the same truck.

National Carriers owns a facility in Irving, Texas used for orientation and safety, light maintenance on trucks, administration, and recruiting. Ten to twenty trucks are present at the facility at any given time for minor maintenance or to drop off trailers. No trucks are located at the facility or generally return there. Individual trucks are at the Irving facility for as little as an hour or as long as two days, but never more than a temporary period.

NCI Leasing is a wholly-owned subsidiary of National Carriers. It's headquarters and principal place of business is at the same location as National Carriers in Liberal, Kansas. It has no office or other location in Texas. NCI Leasing owns the trucks leased to National Carriers. It also sells and leases trucks to others.

Titles to the trucks are held in Kansas, with NCI Leasing having equitable ownership subject to security interests held by its lenders. NCI Leasing pays business personal property tax on the trucks in Kansas.

For tax year 2016, Dallas County Appraisal District issued a notice of appraised value to National Carriers for business personal property valued at over $53 million. The property was 430 trucks operated by National Carriers. National Carriers protested the notice on several grounds, including that the trucks were not taxable in Dallas County and National Carriers did not own the trucks. National Carriers and the chief appraiser reached a value settlement, which adjusted the appraised value to $0.

Afterwards, DCAD sent a supplemental notice of appraised value for the trucks to National Carriers intended for NCI Leasing. National Carriers and NCI Leasing filed a protest of the notice on the same grounds as the initial protest and that the value settlement precluded the supplemental notice of appraised value. The Dallas County Appraisal Review Board denied the protest and assessed a business personal property tax value to NCI Leasing of over $8.7 million.

National Carriers and NCI Leasing filed suit seeking judicial review of the decision. *See* TEX. TAX CODE §§ 42.01–.09. After a bench trial, the trial court determined that the trucks lacked local situs in Dallas County and rendered judgment adjusting the appraised value of the trucks to $0. The trial court filed findings of fact

and conclusions of law supporting its judgment. DCAD and the ARB (collectively DCAD) appeal the trial court's judgment.

## Standard of Review

Findings of fact in a nonjury trial have the same weight as a jury's verdict and are reviewed under the same standards that are applied in reviewing evidence to support a jury's verdict. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In evaluating the legal sufficiency of the evidence to support a finding, we credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The ultimate test is whether the evidence allows reasonable minds to reach the finding under review. *See id.* Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Catalina*, 881 S.W.2d at 297. In reviewing the factual sufficiency of evidence, we review all the evidence in support of and against the trial court's finding and will set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In a bench trial, the trial court is the sole judge of the credibility of the witnesses and may believe one witness over another and resolve any conflicts or inconsistencies in the testimony. *Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied).

–4–

A party appealing from a nonjury trial in which the trial court made findings of fact and conclusions of law should direct an attack on the sufficiency of the evidence at specific findings of facts, rather than the judgment as a whole. *See Shaw*, 251 S.W.3d at 169; *Fiduciary Mortg. Co. v. City Nat. Bank of Irving*, 762 S.W.2d 196, 204 (Tex. App.—Dallas 1988, writ denied). Unless challenged by point of error on appeal, findings of fact are binding on the parties and the appellate court. *See Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 658 (Tex. App.—Dallas 1993, writ denied). However, a challenge to an unidentified finding of fact may be sufficient if we can fairly determine from the argument the specific finding of fact the appellant challenges. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) (per curiam); *Shaw*, 251 S.W.3d at 169.

## Discussion

The parties agree that section 21.02 controls this case. *See* TEX. TAX CODE § 21.02(a). That section provides that tangible personal property is taxable by a taxing unit if:

> (1) it is located in the unit on January 1 for more than a temporary period;
>
> (2) it normally is located in the unit, even though it is outside the unit on January 1, if it is outside the unit only temporarily;
>
> (3) it normally is returned to the unit between uses elsewhere and is not located in any one place for more than a temporary period; or
>
> (4) the owner resides (for property not used for business purposes) or maintains the owner's principal place of business in this state (for property used for business purposes) in the unit and the property is

taxable in this state but does not have a taxable situs pursuant to Subdivisions (1) through (3) of this subsection.

*Id.*

Although DCAD does not challenge any specific findings of fact, we determine from its argument that it challenges the findings that the trucks were not located in Dallas County for more than a temporary period, the trucks were not normally located in Dallas County, the trucks were not normally returned to Dallas County between uses elsewhere and were not located in any one place for more than a temporary period, and NCI Leasing, the owner of the trucks, did not maintain its principal place of business in Dallas County.

"Temporary" as used in section 21.02(a) is given its ordinary meaning, that is, lasting for a limited time. *See Patterson-UTI Drilling Co. LP, LLLP, v. Webb County Appraisal Dist.*, 182 S.W.3d 14, 18 (Tex. App.—San Antonio 2005, no pet.). From the evidence in the record, the trial court could reasonably conclude that the trucks were not located in Dallas County for more than a temporary period. DCAD admits in its brief, "Individual trucks are on the Irving property for temporary periods of time." The testimony reflects that ten to twenty trucks are on the Irving Property at any given time and only there for short periods of time, as little as one hour, but never more than two days. The evidence also shows that no trucks were stationed or located at the Irving Property and were not returned to the Irving Property between assignments. The trucks continually transport freight for National

Carriers' customers and are not located at any specific location. The evidence further shows that NCI Leasing owns the trucks and did not maintain its principal place of business in Dallas County in 2015 or on January 1, 2016. Based on the evidence, it was reasonable for the trial court to reach the challenged findings. Thus, we conclude the evidence was legally sufficient to support the trial court's judgment.

DCAD argues there is a rebuttable presumption, once the taxing unit present a prima facie case, that personal property has a tax situs within the unit's jurisdiction. *Davis v. City of Austin*, 632 S.W.2d 331, 333 (Tex. 1982) (discussing presumption arising in tax delinquency suit). A presumption, however, disappears once evidence to the contrary is introduced. *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995). Here, National Carriers and NCI Leasing presented ample evidence contrary to a presumption that the trucks had a situs in Dallas County under section 21.02(a). Thus, the *Davis* presumption was rebutted.

DCAD also argues that the state has jurisdiction to tax the property under tax code section 11.01 and cites *Alaska Flight Services, LLC v. Dallas Central Appraisal District*, 261 S.W.3d 884 (Tex. App.—Dallas 2008, no pet.), for the holding that "continually" as used in section 11.01(c)(3) means "while present in this state, though not necessarily exclusively, for some period of the tax year." *Id.* at 889. The case before us, however, deals with whether DCAD has authority to tax personal property under section 21.02(a). As we said in *Alaska Flight*, section 21.02 deals

with tax situs, "an entirely different standard," than the state's jurisdiction to tax under section 11.01. *Id.* at 887.

DCAD argues that inherently mobile property acquires a tax situs when it has been located in an area with such permanence that it becomes part of the general mass of property within the boundaries of the taxing authority. *See Exxon Corp. v. San Patricio County Appraisal Dist.*, 822 S.W.2d 269, 274 (Tex. App.—Corpus Christi 1991, writ denied). *Exxon Corp. s*tands for the proposition that to acquire tax situs, property must be located in a particular area with a "degree of permanency" that distinguishes it from property that is in the area "on a purely temporary or transitory basis." *Id.* at 273–74 (quoting *Davis*, 632 S.W.2d at 334). In *Exxon Corp.*, the evidence showed that Exxon stored massive quantities of crude oil in seventeen oil tanks located within the county continuously throughout the year, although each barrel of oil remained there for an average of only seventeen days. *Id.* at 272. The court noted that in analyzing a quantity of fungible personal property, it would be inappropriate to break the property down into individual units. *Id.* at 273. Here, unlike the fungible crude oil in *Exxon Corp.*, the individual trucks owned by NCI Leasing are discrete, readily identifiable, pieces of tangible personal property. They are unlike fungible quantities of crude oil stored in tanks. Thus, the conclusion that an undifferentiated mass of oil was continuously present in the county is inapt in this case. *See id.* at 273. Even so, the court in *Exxon Corp.* concluded that the evidence

supported the trial court's judgment. *Id.* at 275. We reach the same conclusion in this case: the evidence was legally sufficient to support the trial court's judgment.

Next, DCAD argues that National Carriers is an equitable owner of the trucks and is subject to taxation under section 21.02(a)(4). If personal property does not have situs in a taxing unit under subsections (1) through (3) of section 21.02(a), the taxing unit may tax the property if the owner maintains the owner's principal place of business in the unit. TEX. TAX CODE ANN. § 21.02(a)(4).

Because Title 1 of the tax code does not define "owner," *see* TEX. TAX CODE § 1.04, we give the term its plain and ordinary meaning, *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016). An "owner" is "[s]omeone who has the right to possess, use, and convey something." *Owner*, Black's Law Dictionary (11th ed. 2019); *see also Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 839–40 (Tex. App.—Austin 2004, no pet.) ("plain meaning of 'owner' contemplates someone with legal or rightful title").

The general rule is that taxes are imposed on the legal owner of the property; "[t]he person having legal title to property is generally considered to be the owner thereof for purposes of taxation." *Childress Cty. v. State*, 92 S.W.2d 1011, 1015 (Tex. 1936); *see also* TEX. TAX CODE ANN. § 32.07(a) (property taxes are personal obligation of person who owns or acquires property on January 1). Here, it is undisputed that NCI Leasing, not National Carriers, owned the trucks on January 1, 2016 and that it did not maintain its principal place of business in Dallas County.

The authority relied upon by DCAD for the equitable-title argument is inapposite. *See TRQ Captain's Landing L.P. v. Galveston Cent. Appraisal Dist.*, 212 S.W.3d 726, 732 (Tex. App.—Houston [1st Dist.] 2006), *aff'd*, 423 S.W.3d 374 (Tex. 2014). That case held that a tax *exemption* available for property owned by a charitable entity organized as a community housing development organization (CHDO) could be claimed by a limited partnership that was wholly owned by a limited liability corporation with a CHDO as its only member. *Id*. The supreme court later agreed with this holding and reasoned that the statutory language of the tax exemption, TEX. TAX CODE § 11.182, reflected a legislative intent to encourage private investment in low- and moderate-income housing by providing a tax exemption even if a CHDO is only a participant in tiered ownership. *AHF-Arbors at Huntsville I, LLC v. Walker Cty. Appraisal Dist.*, 410 S.W.3d 831, 837–38 (Tex. 2012). The court concluded that extending the exemption to property equitably owned by a CHDO through wholly-owned subsidiaries was "compelled by the text of Section 11.182 and consistent with its purpose." *Id*. at 839.

This case concerns liability for taxes, not the availability of a specific statutory tax exemption. Thus, the general rule that tax liability is imposed on the legal title holder applies. *See Childress*, 92 S.W.2d at 1015; *Sebastian Cotton & Grain, Ltd. v. Willacy County Appraisal Dist.*, 581 S.W.3d 804, 809–10 (Tex. App.—Corpus Christi–Edinburg 2019, pet. denied) (distinguishing *AHF-Arbors* and holding that legal title holder was liable for taxes); *see also Bailey v. Cherokee County Appraisal*

*District*, 862 S.W.2d 581, 584 (Tex. 1993) ("While it is true that the heirs hold equitable title to estate property, this interest does not give rise to tax liability. The responsibility for taxes lies with the administrator as holder of legal title.").

Furthermore, subsidiary corporations and parent corporations are considered separate and distinct "persons" as a matter of law; the separate entity of corporations will be observed by the courts even in instances where one may dominate or control, or may even treat it as a mere department, instrumentality, or agency of the other. *Gregg Cty. Appraisal Dist. v. Laidlaw Waste Sys., Inc.*, 907 S.W.2d 12, 17 (Tex. App.—Tyler 1995, writ denied). DCAD has presented no compelling reason to abandon this rule in this case.

DCAD also contends that public policy prevents property from escaping business personal property taxation. Although DCAD cites no authority for this argument, we note that it is the legislature that determines public policy though the statutes it passes. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 665 (Tex. 2008). The legislature has established the public policy regarding the taxation of tangible personal property by taxing units through the express language of section 21.02. Because DCAD lacks authority to tax under that section in this case, the public policy established by the legislature is satisfied.

We overrule DCAD's sole issue on appeal.

## Conclusion

We conclude the evidence is legally sufficient to support the trial court's findings of fact and judgment. We affirm the judgment.

/Erin A. Nowell/  
ERIN A. NOWELL  
JUSTICE

181520F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DALLAS CENTRAL APPRAISAL
DISTRICT AND DALLAS
COUNTY APPRAISAL REVIEW
BOARD, Appellants

No. 05-18-01520-CV     V.

NATIONAL CARRIERS, INC.
AND NCI LEASING, INC.,
Appellees

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-04548.
Opinion delivered by Justice Nowell.
Justices Bridges and Whitehill
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees National Carriers, Inc. and NCI Leasing, Inc. recover their costs of this appeal from appellants Dallas Central Appraisal District and Dallas County Appraisal Review Board.

Judgment entered this 5th day of May, 2020.